This is an interlocutory appeal pursuant to Rule 5(a), A.R.App.P., from an order of the Circuit Court for Jefferson County denying defendants' motions to dismiss for lack of personal jurisdiction. We affirm.
In November 1984, Holdco of Pinellas County, Inc. ("Holdco"), a Florida corporation, executed and delivered to Central Bank of the South ("Central Bank"), an Alabama banking corporation, a promissory note with a principal amount of $4,000,000. All negotiations regarding the promissory note took place either via telephone between representatives of Holdco and Central Bank, or in Florida between representatives of Holdco and Central Bank. The promissory note was guaranteed by several individuals, including appellants/guarantors, Robert G. Keelean, Albert Geiger, Jr., and Thomas V. Slaughter, who all delivered their continuing unlimited guarantees to Central Bank for the debts, obligations, and liabilities of Holdco. No evidence was presented that any of the individual guarantors participated in the promissory note negotiations.
Holdco defaulted on the promissory note. Central Bank filed suit in Jefferson County Circuit Court on the debt on August 11, 1987.[1] Central Bank named Holdco, Keelean, Geiger, and Slaughter as defendants in this action. The guaranty signed by Keelean, Geiger, and Slaughter contained a forum *Page 155 
selection clauses, which stated in pertinent part:
 "(13) This Guaranty and the rights and obligations of the Guarantor and the Bank hereunder shall be governed by and be construed in accordance with the laws of the State of Alabama. Guarantor acknowledges that the negotiation of the provision of this Guaranty took place in the State of Alabama, that this Guaranty was executed in Jefferson County, Alabama, or if executed elsewhere, shall become effective upon Bank's receipt and acceptance of the executed original hereof in said county and state; provided, however, that Bank shall have no obligation to give, nor shall Guarantor be entitled to receive, any notice of such receipt and acceptance for this Guaranty to become a binding obligation of Guarantor. Guarantor acknowledges further that the negotiation, execution and delivery of this Guaranty constitutes the transaction of business within the State of Alabama and that any cause of action arising under this Guaranty will be a cause of action arising from such transaction of business. Guarantor hereby submits himself to jurisdiction in the State of Alabama for any cause of action or action arising out of or in connection with this Guaranty and agrees that venue for any such action shall be in Jefferson County, Alabama. Guarantor hereby waives any and all rights under the laws of any state or jurisdiction to object to venue or jurisdiction within Jefferson County, Alabama."
Central Bank uses this language to assert that the court has personal jurisdiction in Jefferson County, Alabama, over the guarantors to Holdco's obligation to Central Bank.
Three issues are presented by this appeal:
I. Whether forum selection clauses are void as against public policy in this State.
II. Whether signing a guaranty out of state that will have economic effects in this State will satisfy Alabama's long-arm requirement that a defendant have contacts with Alabama sufficient for an Alabama court to properly exercise jurisdiction over that party.
III. Whether the interests of justice warrant the application of the doctrine of forum non conveniens.
 I.
The general rule regarding forum selection clauses in this State was articulated in Redwing Carriers, Inc. v. Foster,382 So.2d 554 (Ala. 1980), where we wrote:
 "We must determine whether parties may contractually divest a court of its jurisdiction. In Alabama, parties cannot confer jurisdiction by consent. Koppers Company v. Gulf Welding and Construction, Inc., 285 Ala. 331, 231 So.2d 896
(1970). We have not been cited to a case in this jurisdiction, nor has our research revealed one which is exactly in point. The Court of Civil Appeals dealt with a similar situation in Hester v. Clinic Masters, Inc., 371 So.2d 915 (Ala.Civ.App. 1979). There, however, the foreign court had already assumed jurisdiction of the cause. We adopt the majority rule stated in 56 A.L.R.2d § 4, p. 306, to the effect that:
 " '. . . contractual agreements by which it is sought to limit particular causes of action which may arise in the future to a specified place, are held invalid.' "
382 So.2d at 556. We addressed this issue again inConticommodity Services, Inc. v. Transamerica Leasing, Inc.,473 So.2d 1053 (Ala. 1985), in which we affirmed the rule inRedwing Carriers.
Appellants rely on our holdings in Redwing Carriers andConticommodity Services, to invalidate the forum selection clause in the guaranty contracts. Central Bank, on the other hand, attempts to distinguish and/or redefine our holding inRedwing Carriers by arguing 1) that Redwing Carriers stands for the proposition that a forum selection clause is valid as long as it does not divest an Alabama court of jurisdiction; and 2) that Redwing Carriers applies only to subject matter jurisdiction, not personal jurisdiction. We must disagree with Central Bank on both counts. Our *Page 156 
holding in Redwing Carriers, supra, specifically stated:
 "We consider contract provisions which attempt to limit the jurisdiction of the courts of this state to be invalid and unenforceable as being contrary to public policy. Parties may not confer jurisdiction by consent, nor may they limit the jurisdiction of a court by consent."
382 So.2d at 556.
Thus, we treat forum selection clauses as invalid, and we cannot consider this one valid simply because it does notdivest an Alabama court of jurisdiction. We expressly hold, also, that Redwing Carriers, supra, includes personal jurisdiction as well as subject matter jurisdiction.
 II.
We next determine whether in this case in personam
jurisdiction exists in an Alabama court via Alabama's long-arm rule. Rule 4.2(a)(2), A.R.Civ.P., sets out the bases for personal jurisdiction over nonresident defendants. It provides:
 "(2) Sufficient Contacts. A person has sufficient contacts with the state when that person, acting directly or by agent, is or may be legally responsible as a consequence of that person's
"(A) transacting any business in this state;
 "(B) contracting to supply services or goods in this state;
 "(C) causing tortious injury or damage by an act or omission in this state including but not limited to actions arising out of the ownership, operation or use of a motor vehicle, aircraft, boat or watercraft in this state;
 "(D) causing tortious injury or damage in this state by an act or omission outside this state if the person regularly does or solicits business, or engages in any other persistent course of conduct or derives substantial revenue from goods used or consumed or services rendered in this state;
 "(E) causing injury or damage in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when the person might reasonably have expected such other person to use, consume, or be affected by the goods in this state, provided that the person also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
 "(F) having an interest in, using, or possessing real property in this state;
 "(G) contracting to insure any person, property, or risk located within this state at the time of contracting;
 "(H) living in the marital relationship within this state notwithstanding subsequent departure from this state, as to all obligations arising from alimony, custody, child support, or property settlement, if the other party to the marital relationship continues to reside in this state; or
 "(I) otherwise having some minimum contacts with this state and, under the circumstances, it is fair and reasonable to require the person to come to this state to defend an action. The minimum contacts referred to in this subdivision (I) shall be deemed sufficient, notwithstanding a failure to satisfy the requirement of subdivisions (A)-(H) of this subsection (2), so long as the prosecution of the action against a person in this state is not inconsistent with the constitution of this state or the Constitution of the United States."
Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228,2 L.Ed.2d 1283 (1958), requires that a nonresident defendant have certain minimum contacts with a state in order for that state's courts to acquire personal jurisdiction over that defendant. A twofold analysis is used in this state in determining whether personal jurisdiction exists over a nonresident defendant:
 1) the determination of whether it is foreseeable to that nonresident defendant that he will be sued in this state; and *Page 157 
 2) the determination of the degree of contact that the nonresident defendant has with this state.
See Alabama Waterproofing Co. v. Hanby, 431 So.2d 141 (Ala. 1983); Duke v. Young, 496 So.2d 37 (Ala. 1986); and Shrout v.Thorsen, 470 So.2d 1222 (Ala. 1985). Appellants/guarantors argue first that although the Central Bank loan to Holdco and Holdco's subsequent default on that loan had a substantial impact on the economy of the State of Alabama, their mere signing of guarantees for the payment of that loan did not make their being haled into an Alabama court foreseeable. They contend that their relationship to Holdco as guarantors of the loan could not satisfy the requirement of contact with the forum. They buttress their argument with the rule stated inHanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283
(1958), in which the Supreme Court stated:
 "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. International Shoe Co. v. State of Washington, 326 U.S. 310, 319, 66 S.Ct. 154, 159, 90 L.Ed. 95."
357 U.S. at 253, 78 S.Ct. at 1239-40, 2 L.Ed.2d at 1298. It is easily conceivable that the primary obligor (Holdco) could reasonably anticipate being called to defend itself in this state, from which it utilized its economic resources. But, can those who guaranteed the loan and received no direct benefits from the loan made by Central to Holdco conceivably have foreseen being haled into an Alabama court on this debt? Or, does the mere signing of a guaranty, out of state, for performance in state, present the sufficient contact with the State of Alabama necessary for in personam jurisdiction? InAlabama Waterproofing Co. v. Hanby, 431 So.2d 141 (Ala. 1983), we upheld the trial court's holding that due process requirements were met by a guaranty signed by nonresident spouses of buyers, even though the guaranty was signed in Mississippi and the spouses were and had been at all times during the negotiations residents of the State of Mississippi. We noted that the transactions would have consequences in this State and that those consequences would make it foreseeable that the spouses would be sued in this State.431 So.2d at 144-46. We are of the opinion that the rationale of AlabamaWaterproofing is applicable to this case. In determining whether the nonresident guarantors possessed sufficient contact with the State of Alabama for a trial court to obtain inpersonam jurisdiction, it is necessary for us to examine all the relevant facts of the case, Alabama Waterproofing, supra. It appears from the record that all guarantors were aware that they were guaranteeing payment of the debts and liabilities of a Florida corporation that was borrowing $4,000,000 from an Alabama corporation. It is quite foreseeable that upon the default of that loan, they would be held accountable on their contracts of guaranty in the State of Alabama. Applying the "effects test" mandated by Calder v. Jones, 465 U.S. 783,104 S.Ct. 1482, 79 L.Ed.2d 804 (1984); Alabama Waterproofing Co. v.Hanby, 431 So.2d 141 (Ala. 1983); Duke v. Young, 496 So.2d 37
(Ala. 1986), we determine that clearly the appellants/guarantors should have foreseen the effects of their contracts of guaranty in the State of Alabama in the event of a default on the promissory note. A clear and firm connection exists between the execution of the promissory note, the subsequent default, the contracts of guaranty, and this litigation. Furthermore, it is clear that the signing of the contracts of guaranty for this loan gave appellants/guarantors the requisite "fair warning" required by Burger King Co. v.Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), which states:
 "By requiring that individuals have 'fair warning that a particular activity may subject [them] to the jurisdiction of a *Page 158 
foreign sovereign,' Shaffer v. Heitner, 433 U.S. 186, 218, 53 L.Ed.2d 683, 97 S.Ct. 2569 [2587] (1977) (Stevens, J., concurring in judgment), the Due Process Clause 'gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit,' World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 62 L.Ed.2d 490, 100 S.Ct. 559
[567] (1980).
 "Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum, Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774, 79 L.Ed.2d 790, 104 S.Ct. 1473 [1478] (1984), and the litigation results from alleged injuries that 'arise out of or relate to' those activities, Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, 80 L.Ed.2d 404, 104 S.Ct. 1868 [1872]."
471 U.S. at 472, 105 S.Ct. at 2182.
We, therefore, hold that the signing of the guarantees was sufficient to create the sufficient contact required by the14th Amendment to the U.S. Constitution, see Rule 4.2(a)(2)(I), so that the Alabama court has in personam jurisdiction.
 III.
We next turn to the final issue raised on appeal, which is whether the doctrine of forum nonconveniens should be applied in this case.
Code of Alabama 1975, § 6-5-430, reads:
 "Enforcement of action upon contract or tort arising in another state when jurisdiction of defendant can be obtained in this state; doctrine of forum non conveniens applied.
 "Whenever, either by common law or the statutes of another state or of the United States, a claim, either upon contract or in tort has arisen outside this state against any person or corporation, such claim may be enforceable in the courts of this state in any county in which jurisdiction of the defendant can be legally obtained in the same manner in which jurisdiction could have been obtained if the claim had arisen in this state; provided, however, the courts of this state shall apply the doctrine of forum non conveniens in determining whether to accept or decline to take jurisdiction of an action based upon such claim originating outside this state; and provided further that, if upon motion of any defendant it is shown that there exists a more appropriate forum outside this state, taking into account the location where the acts giving rise to the action occurred, the convenience of the parties and witnesses, and the interests of justice, the court must dismiss the action without prejudice. Such dismissal may be conditioned upon the defendant or defendants filing with the court a consent (i) to submit to jurisdiction in the identified forum, or (ii) to waive any defense based upon a statute of limitations if an action on the same cause of action is commenced in the identified forum within 60 days of the dismissal."
The defendants argue that in the interest of justice and to avoid any undue inconvenience to them and to other nonparty witnesses, this case should be heard in the State of Florida. They further contend that all documents regarding this matter are being held by the Federal Deposit Insurance Corporation in St. Petersburg, Florida, and that based on those facts, we should decline to exercise jurisdiction in this case. We must reject the defendants' contention as based on an insufficient showing of hardship. It has not been shown how the parties and witnesses will be inconvenienced in coming to Alabama to litigate this matter, any more than the plaintiffs would be inconvenienced in having to go to Florida. It is also not apparent how the documentation located at the Federal Deposit Insurance Corporation office in St. Petersburg, Florida, creates inconvenience to the defendants, given our ample selection of discovery devices. *Page 159 
For the foregoing reasons, the order of the trial court is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and ALMON, J., concur.
MADDOX, JONES and STEAGALL, JJ., concur specially.
[1] On August 11, 1987, the principal amount due was $627,500. Interest due was calculated to be 029,820.95, with interest accruing at a rate of $152.52 per day.