RICHARD L. HOLMES, Retired Appellate Judge.
SouthTrust Bank of Baldwin County (SouthTrust) filed an action against Empire Corporate Federal Credit Union (Empire) and MONY Federal Credit Union (MONY). SouthTrust alleged in its complaint that Empire and MONY failed to give timely notice to SouthTrust of the nonpayment of a certain share draft, which is the credit union version of a check, and that such failure resulted in damages to SouthTrust in the amount of $28,762, plus interest, attorney fees, and costs.
Empire filed a motion to dismiss for lack of jurisdiction. After a hearing the trial court granted the motion to dismiss. SouthTrust filed a motion, wherein it requested that the trial court reconsider its order dismissing the action against Empire for lack of jurisdiction. SouthTrust’s motion was denied.
MONY filed a motion for a judgment on the pleadings, which was denied. Thereafter, SouthTrust filed a motion for summary judgment; a motion for leave to amend the complaint to add a new theory of recovery against Empire; and a second motion, wherein it requested that the trial court reconsider its order dismissing the action against Empire. All of these motions were denied. MONY filed a motion for summary judgment, which was granted.
SouthTrust appeals. This ease is before this court pursuant to Ala.Code 1975, § 12-2-7(6).
There are three main issues on appeal: (1) Whether the trial court committed reversible error when it granted Empire’s motion to dismiss on the basis of lack of jurisdiction. (2) Whether the trial court committed reversible error when it granted MONY’s motion for summary judgment. (3) Whether the trial court committed reversible error when it denied SouthTrust’s motion for summary judgment.
Our review of the record reveals the following pertinent facts: The share draft which is the subject of the present litigation was issued by Russell Brian Drake to Floyd Enfinger, who is an attorney. The share *550 draft, which was dated May 20, 1992, was drawn on Drake’s account with MONY in the amount of $28,762. The face of the share draft provided an Opelika, Alabama, address for Drake. The share draft also indicated on its face that it was drawn on MONY in Syracuse, New York, and payable through Empire in Albany, New York.
MONY is a federally chartered credit union, which maintains its only office in the state of New York. Empire is a federally chartered corporate credit union organized to provide financial services to credit unions located in the state of New York. Empire serves as the payable-through bank for share drafts drawn on share draft accounts maintained with MONY.
When a share draft is accepted for deposit by a bank, the depository bank forwards the share draft to a collecting bank for collection and payment. Because Empire serves as the payable-through bank for MONY, Empire’s federal reserve routing number appears on the face of the share drafts issued on accounts maintained with MONY. Consequently, the collecting bank will forward the share draft directly to Empire for payment, and MONY never receives the actual share draft as part of the payment process. When Empire receives a share draft for payment, it electronically transmits the relevant payment information (the member account number at MONY, serial number, amount, date received by Empire, etc.) to MONY. After receiving the relevant payment information, MONY will determine if the share draft should be paid by Empire. At the end of each business day, MONY makes a payment to Empire for all share drafts paid by Empire for that business day.
On May 22, 1992, Enfinger deposited into his trust account with SouthTrust the share draft issued by Drake. Although Drake issued the share draft to Enfinger, he had closed his share draft account with MONY prior to May 1992. At the time that Drake closed his account, MONY notified Empire that Drake had closed his account and that, therefore, as a matter of course, Empire should not pay any future share drafts which were drawn on that particular account. Consequently, the share draft issued by Drake was returned to SouthTrust unpaid.
On May 29, 1992, a cheek in the amount of $28,762 was issued by Enfinger on his trust account and was negotiated at SouthTrust’s branch in Opelika. The unpaid share draft was received by SouthTrust on June 1, 1992.
The availability of funds and collection of cheeks are governed by Regulation CC, 12 C.F.R. § 229 (1994), which is divided into three subparts: Subpart A-General, Subpart B-Availability of Funds and Disclosure of Fund Availability Policies, and Subpart C-Collection of Checks. SouthTrust contends that Empire failed to comply with the notice requirements as provided in 12 C.F.R. § 229.33.
SouthTrust notified Empire that it was protesting the return of the share draft because Empire failed to notify SouthTrust in a timely manner that the share draft was being returned unpaid. SouthTrust requested reimbursement of the $28,762. Empire refused to comply with the request. The present litigation followed.
The first issue is whether the trial court committed reversible error when it granted Empire’s motion to dismiss due to lack of jurisdiction. Whether a court has personal jurisdiction over a nonresident defendant is a determination which must be made on a ease-by-case basis after considering all of the relevant facts and circumstances. Steel Processors, Inc. v. Sue’s Pumps, Inc. Rentals, 622 So.2d 910 (Ala. 1993).
In Keelean v. Central Bank of the South, 544 So.2d 153, 156 (Ala.1989), our supreme court stated:
“Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), requires that a nonresident defendant have certain minimum contacts with a state in order for that state’s courts to acquire personal jurisdiction over that defendant. A twofold analysis is used in this state in determining whether personal jurisdiction exists over a nonresident defendant:
“1) the determination of whether it is foreseeable to that nonresident defendant that he will be sued in this state; and
“2) the determination of the degree of contact that the nonresident defendant has with this state.”
*551 An essential inquiry in answering the first prong of this test is whether Empire acted in such a manner that it could reasonably anticipate that the direct consequences of its actions would be felt in Alabama. Steel Processors, Inc., 622 So.2d 910.
SouthTrust contends that Empire had minimum contacts with the state of Alabama which were sufficient to require it to submit to the jurisdiction of the courts in Alabama. SouthTrust contends that because Empire deliberately contracted to be the payable-through bank for MONY, which had depositors located in the state of Alabama, and because, under the terms of the contract, Empire was to provide prompt notice to depository banks such as SouthTrust of the dishonor of MONY cheeks in the amount of $2,500 or more, Empire could have reasonably anticipated that the direct consequences of its actions would be felt in Alabama.
The chief operating officer for Empire filed an affidavit in support of its motion to dismiss. The affidavit stated, in pertinent part, that “Empire’s entire field of membership, which is primarily composed of approximately seven hundred fifty (750) credit unions, is located in New York State.” The affidavit also asserted that “Empire has never transacted business in the State of Alabama”; has “never had directors, officers or employees located in the State of Alabama”; and has never “owned or held an interest in any personal or real property located in the State of Alabama.” The affidavit further provided “[tjhat in acting as a payable-through bank for purposes of processing its member credit unions’ share drafts, Empire receives and returns items through intermediary banks. Such banks are also located outside the state of Alabama.” It appears that the only contact that Empire had with the state of Alabama occurred when it processed a share draft which was issued by a member of MONY, had an Alabama address on the face of the share draft, and was deposited into an Alabama bank.
In view of the above, we find that under the facts and circumstances of this particular case, the requisite sufficient contacts with the state of Alabama were not established. Consequently, the trial court correctly granted Empire’s motion to dismiss due to lack of jurisdiction.
The second issue on appeal is whether the trial court erred when it granted the motion for summary judgment filed by MONY.
SouthTrust contends that both Empire and MONY were liable for the failure to provide notice of nonpayment pursuant to 12 C.F.R. § 229.33. MONY contends that Empire, as MONY’s payable-through bank, was obligated to provide notice of nonpayment to the depository bank and that MONY was not liable for Empire’s failure to provide the notice as required by § 229.33.
12 C.F.R. § 229.33 provides in pertinent part:
“(a) Requirement. If a paying bank determines not to pay a cheek in the amount of $2,500 or more, it shall provide notice of nonpayment such that the notice is received by the depositary bank by 4:00 p.m. (local time) on the second business day following the banking day on which the check was presented to the paying bank.”
(Emphasis added.)
The term “paying bank” is defined in 12 C.F.R. § 229.2(z), which provides in pertinent part:
“(z) Paying bank means—
“(1) The bank by which a check is payable, unless the cheek is payable at another bank and is sent to the other bank for payment or collection;
[[Image here]]
“(4) The bank through which a check is payable and to which it is sent for payment or collection, if the check is not payable by a bank; or
[[Image here]]
“For purposes of subpart C ... paying bank includes the bank through which a check is payable and to which the check is sent for payment or collection, regardless of whether the check is payable by another bank, and the bank whose routing number appears on a check in fractional or magnetic form and to which the check is sent for payment or collection.”
(Emphasis added.)
In the present case, the share draft was payable by MONY and payable through Empire.
*552 The Commentary to Regulation CC provides in pertinent part: “(z) Paying bank. The regulation uses this term in lieu of the Act’s originating depository institution.” (Emphasis in original.) The “Act” referred to in the commentary is the Expedited Funds Availability Act (12 U.S.C. §§ 4001 through 4010 (1989)). “Originating depository institution” is defined in 12 U.S.C. § 4001(17) as follows: “The term ‘originating depository institution’ means the branch of a depository institution on which a check is drawn.”
The share draft in this ease is drawn on MONY. Although the share draft is routed to Empire as the payable-through bank, MONY makes the ultimate determination regarding which share drafts are to be paid, and at the end of each business day, MONY makes payment to Empire for all share drafts paid by Empire for that day.
Under the facts of this case, we find that both Empire and MONY were “paying banks” and were obligated to provide notice of nonpayment of the share draft pursuant to § 229.33. Consequently, the trial court erred when it granted the motion for summary judgment in favor of MONY.
The third issue on appeal is whether the trial court erred when it denied the motion for summary judgment filed by SouthTrust. SouthTrust contends that its motion for summary judgment should have been granted because, SouthTrust says, it is undisputed that neither Empire nor MONY notified SouthTrust in a timely manner of the nonpayment of the share draft and because SouthTrust was damaged as a result of the failure to notify in a timely manner.
We would note that 12 C.F.R. § 229.38(a) provides, in pertinent part: “[t]he measure of damages for failure to exercise ordinary care is the amount of the loss incurred, up to the amount of the cheek, reduced by the amount of the loss that party would have incurred even if the bank had exercised ordinary care.” The Commentary to Regulation CC, § 229.38(a), provides the following pertinent statements:
“Under this measure of damages, a depositary bank ... must show that the damage incurred results from the negligence proved. For example, the depositary bank may not simply claim that its customer will not accept a charge-back of a returned cheek, but must prove that it could not charge back when it received the returned check and could have charged back if no negligence had occurred, and must first attempt to collect from its customer.”
Our review of the record reveals that there remains a genuine issue of a material fact of whether SouthTrust is entitled to damages and, if so, the amount of such damages.
The judgment is affirmed in part and reversed in part, and the cause is remanded for proceedings consistent with this opinion.
The foregoing opinion was prepared by Retired Appellate Judge Richard L. Holmes while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
All the Judges concur.