SouthTrust Bank of Baldwin County ("SouthTrust") sued Empire Corporate Federal Credit Union ("Empire") and MONY Federal Credit Union ("MONY"), alleging that they had negligently or in bad faith failed to timely notify it of the nonpayment of a certain share draft, which is the credit union version of a check, and that that omission had resulted in damages to SouthTrust of $28,762; SouthTrust sought damages in that amount, plus interest, attorney fees, and costs. The trial court dismissed SouthTrust's claim against Empire on the ground of lack of personal jurisdiction, and entered a summary judgment for MONY on the ground that MONY was under no legal duty to notify SouthTrust of the non-payment. The Court of Civil Appeals affirmed the dismissal of Empire, but reversed the summary judgment for MONY. See SouthTrust Bank of BaldwinCounty v. Empire Corporate Federal Credit Union, 668 So.2d 548
(Ala.Civ.App. 1994), for a complete statement of the facts and a discussion of the legal principles relied on by the court. Both SouthTrust and MONY sought certiorari review. We affirm in part, reverse in part, and remand.
We note initially that, after carefully considering MONY's petition and briefs, we have concluded that the Court of Civil Appeals correctly held that the summary judgment for MONY was improper. We therefore affirm the judgment of the Court of Civil Appeals insofar as it sets aside the summary judgment entered for MONY.
However, we disagree with the conclusion of the Court of Civil Appeals that the trial court lacked personal jurisdiction over Empire. The pertinent portion of that court's opinion reads as follows:
 "Our review of the record reveals the following pertinent facts: The share draft which is the subject of the present litigation was issued by Russell Brian Drake to Floyd Enfinger, who is an attorney. The share draft, which was dated May 20, 1992, was drawn on Drake's account with MONY in the amount of $28,762. The face of the share draft provided an Opelika, Alabama, address for Drake. The share draft also *Page 554 
indicated on its face that it was drawn on MONY in Syracuse, New York, and payable through Empire in Albany, New York.
 "MONY is a federally chartered credit union, which maintains its only office in the state of New York. Empire is a federally chartered corporate credit union organized to provide financial services to credit unions located in the state of New York. Empire serves as the payable-through bank for share drafts drawn on share draft accounts maintained with MONY.
 "When a share draft is accepted for deposit by a bank, the depositary bank forwards the share draft to a collecting bank for collection and payment. Because Empire serves as the payable-through bank for MONY, Empire's federal reserve routing number appears on the face of the share drafts issued on accounts maintained with MONY. Consequently, the collecting bank will forward the share draft directly to Empire for payment, and MONY never receives the actual share draft as part of the payment process. When Empire receives a share draft for payment, it electronically transmits the relevant payment information (the member account number at MONY, serial number, amount, date received by Empire, etc.) to MONY. After receiving the relevant payment information, MONY will determine if the share draft should be paid by Empire. At the end of each business day, MONY makes a payment to Empire for all share drafts paid by Empire for that business day.
 "On May 22, 1992, Enfinger deposited into his trust account with SouthTrust the share draft issued by Drake. Although Drake issued the share draft to Enfinger, he had closed his share draft account with MONY prior to May 1992. At the time that Drake closed his account, MONY notified Empire that Drake had closed his account and that, therefore, as a matter of course, Empire should not pay any future share drafts which were drawn on that particular account. Consequently, the share draft issued by Drake was returned to SouthTrust unpaid.
 "On May 29, 1992, a check in the amount of $28,762 was issued by Enfinger on his trust account and was negotiated at [SouthTrust Bank of Opelika]. The unpaid share draft was received by SouthTrust on June 1, 1992.
 "The availability of funds and collection of checks are governed by Regulation CC, 12 C.F.R. § 229 (1994), which is divided into three subparts: Subpart A-General, Subpart B-Availability of Funds and Disclosure of Fund Availability Policies, and Subpart C-Collection of Checks. SouthTrust contends that Empire failed to comply with the notice requirements as provided in 12 C.F.R. § 229.33.[1]
 "SouthTrust notified Empire that it was protesting the return of the share draft because Empire failed to notify SouthTrust in a timely manner that the share draft was being returned unpaid. SouthTrust requested reimbursement of the $28,762. Empire refused to comply with the request. The present litigation followed.
 "The first issue is whether the trial court committed reversible error when it granted Empire's motion to dismiss due to lack of jurisdiction. Whether a court has personal jurisdiction over a nonresident *Page 555 
defendant is a determination which must be made on a case-by-case basis after considering all of the relevant facts and circumstances. Steel Processors, Inc. v. Sue's Pumps, Inc. Rentals, 622 So.2d 910
(Ala. 1993).
 "In Keelean v. Central Bank of the South, 544 So.2d 153, 156 (Ala. 1989), our supreme court stated:
 " 'Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), requires that a nonresident defendant have certain minimum contacts with a state in order for that state's courts to acquire personal jurisdiction over that defendant. A twofold analysis is used in this state in determining whether personal jurisdiction exists over a nonresident defendant:
 " '1. the determination of whether it is foreseeable to that nonresident defendant that he will be sued in this state; and
 " '2. the determination of the degree of contact the nonresident defendant has with this state.'
 "An essential inquiry in answering the first prong of this test is whether Empire acted in such a manner that it could reasonably anticipate that the direct consequences of its actions would be felt in Alabama. Steel Processors, Inc., 622 So.2d 910.
 "SouthTrust contends that Empire had minimum contacts with the state of Alabama which were sufficient to require it to submit to the jurisdiction of the courts in Alabama. SouthTrust contends that because Empire deliberately contracted to be the payable-through bank for MONY, which had depositors located in the state of Alabama, and because, under the terms of the contract, Empire was to provide prompt notice to depositary banks such as SouthTrust of the dishonor of MONY checks in the amount of $2,500 or more, Empire could have reasonably anticipated that the direct consequences of its actions would be felt in Alabama.
 "The chief operating officer for Empire filed an affidavit in support of its motion to dismiss. The affidavit stated, in pertinent part, that 'Empire's entire field of membership, which is primarily composed of approximately seven hundred fifty (750) credit unions, is located in New York State.' The affidavit also asserted that 'Empire has never transacted business in the State of Alabama'; has 'never had directors, officers or employees located in the State of Alabama'; and has never 'owned or held an interest in any personal or real property located in the State of Alabama.' The affidavit further provided '[t]hat in acting as a payable-through bank for purposes of processing its member credit unions' share drafts, Empire receives and returns items through intermediary banks. Such banks are also located outside the state of Alabama.' It appears that the only contact that Empire had with the state of Alabama occurred when it processed a share draft which was issued by a member of MONY, had an Alabama address on the face of the share draft, and was deposited into an Alabama bank.
 "In view of the above, we find that under the facts and circumstances of this particular case, the requisite sufficient contacts with the state of Alabama were not established. Consequently, the trial court correctly granted Empire's motion to dismiss due to lack of jurisdiction."
668 So.2d at 549-551.
In Dillon Equities v. Palmer Cay, Inc., 501 So.2d 459, 461
(Ala. 1986), this Court stated:
 "It has long been established that physical presence in the state is not a prerequisite to effective service of process on a nonresident defendant; Milliken v. Meyer, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940); see also Shrout v. Thorsen, 470 So.2d 1222 (Ala. 1985). What is required is that the out-of-state resident have 'some minimum contacts with this state [so that], under the circumstances, it is fair and reasonable to require the person to come to this state to defend an action.' Rule 4.2(a)(2)(I), Ala.R.Civ.P.
 " ' "[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain *Page 556 
minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice' " ' McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), quoting International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Alabama's long-arm statute (Rule 4.2, AlaR.Civ.P.) has been interpreted by this Court to extend the jurisdiction of Alabama courts to the permissible limits of due process. DeSotacho, Inc. v. Valnit Industries, Inc., 350 So.2d 447 (Ala. 1977), Duke v. Young, 496 So.2d 37 (Ala. 1986).
 "Alabama's long-arm procedure for service of process is not limited to 'rigid transactional categories' or subject to a mechanical formula. Alabama Waterproofing Co. v. Hanby, 431 So.2d 141
(Ala. 1983). Instead, the relevant facts and attendant circumstances must be examined and the relationship among the defendant, the forum, and the litigation analyzed to determine if the defendant has sufficient 'minimum contacts' so that 'the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' International Shoe Co. v. Washington."
In Lowry v. Owens, 621 So.2d 1262, 1265 (Ala. 1993), we noted:
 " 'The focal point of the analysis is the alleged "contacts" which a defendant has with the forum state. Courts look to "the relationship among the defendant, the forum, and the litigation." Shaffer v. Heitner, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977). . . . [The nonresident defendant's physical] presence or absence from the forum state is not the foundation upon which a determination is made. Physical presence merely provides strong, objective evidence of sufficient contacts. The fundamental question is, did the defendant act in such a manner that he reasonably ought to anticipate the direct consequences of his actions to be felt by another person residing in another state?
" '. . . .
 " 'Crucial to the analysis is the element of foreseeability of the consequences of the defendant's activities. There must be a clear, firm nexus between the acts of the defendant and the consequences complained of in order to establish the necessary contacts.'
"Duke v. Young, 496 So.2d 37, 39 (Ala. 1986).
 "In Keelean v. Central Bank of the South, 544 So.2d 153, 156 (Ala. 1989), we set forth a two-part analysis for determining whether an Alabama court can exercise personal jurisdiction over a nonresident defendant:
 " '1) the determination of whether it is foreseeable to that nonresident defendant that he will be sued in this state; and
 " '2) the determination of the degree of contact that the nonresident defendant has with the state.'
 "Id. This analysis arose from a synthesis of the constitutional principles discussed earlier in this opinion."
Rule 4.2(a), Ala.R.Civ.P., which sets out the contacts necessary to give an Alabama court jurisdiction over a nonresident defendant, provides in pertinent part:
 "(2) Sufficient contacts. A person has sufficient contacts with the state when that person, acting directly or by agent, is or may be legally responsible as a consequence of that person's:
". . . .
 "(B) Contracting to supply services . . . in this state;
". . . .
 "(I) Otherwise having some minimum contacts with this state and, under the circumstances, it is fair and reasonable to require the person to come to this state to defend an action. The minimum contacts referred to in this subdivision (I) shall be deemed sufficient, notwithstanding a failure to satisfy the requirement of subdivisions (A)-(H) of this subsection (2), so long as the prosecution of the action against a person in this state is not inconsistent with the Constitution of this state or the Constitution of the United States." *Page 557 
After examining the particular facts and circumstances of the present case, we conclude that Empire established "sufficient contacts" with this state by contracting with MONY to serve as the payable-through bank for share drafts drawn on share draft accounts maintained with MONY. We agree with the following assessment of the facts, found on page 21 of SouthTrust's brief in support of its petition:
 "The key factor in the case now before this Court is that Empire voluntarily agreed to perform a service in every state where a MONY share draft of $2,500 or more would be deposited if it was then dishonored. SouthTrust did not ask [Empire] to make that contract. Nevertheless, it is because of the fact that SouthTrust . . . [accepts] share drafts for deposit that MONY is able to sell its services as a credit union and Empire is able to sell its services to credit unions. Empire and MONY both obtain the benefit of [SouthTrust's acceptance of share drafts for deposit] every day."
Although, as the Court of Civil Appeals noted, Empire had no physical contacts with Alabama, we have consistently held that physical presence in this state is not a prerequisite to effective service of process on a nonresident defendant. On the other hand, it is determinative that Empire had good reason to anticipate litigation within Alabama if it should fail to timely notify SouthTrust (or any other Alabama bank accepting share drafts drawn on a MONY account) of nonpayment of a share draft. It certainly does not offend traditional notions of fair play and substantial justice to allow an Alabama bank relying on Empire's services to seek redress in an Alabama court. In this respect, this case is materially indistinguishable fromKeelean v. Central Bank of the South, 544 So.2d 153 (Ala. 1989). In Keelean, Central Bank was asked to lend money to a Florida corporation, Holdco. As a prerequisite for lending money to Holdco, Central Bank required several defendants to sign a guaranty agreement. Holding that the trial court had personal jurisdiction over the nonresident defendants, this Court wrote:
 "It is easily conceivable that the primary obligor (Holdco) could reasonably anticipate being called to defend itself in this state, from which it utilized its economic resources. But, can those who guaranteed the loan and received no direct benefits from the loan made by Central to Holdco conceivably have foreseen being haled into an Alabama court on this debt? Or, does the mere signing of a guaranty, out of state, for performance in state, present the sufficient contact with the State of Alabama necessary for in personam jurisdiction? In Alabama Waterproofing Co. v. Hanby, 431 So.2d 141 (Ala. 1983), we upheld the trial court's holding that due process requirements were met by a guaranty signed by nonresident spouses of buyers, even though the guaranty was signed in Mississippi and the spouses were and had been at all times during the negotiations residents of the State of Mississippi. We noted that the transactions would have consequences in this State and that those consequences would make it foreseeable that the spouses would be sued in this State. 431 So.2d at 144-46. We are of the opinion that the rationale of Alabama Waterproofing is applicable to this case. In determining whether the nonresident guarantors possessed sufficient contact with the State of Alabama for a trial court to obtain in personam
jurisdiction, it is necessary for us to examine all the relevant facts of the case, Alabama Waterproofing, supra. It appears from the record that all guarantors were aware that they were guaranteeing payment of the debts and liabilities of a Florida corporation that was borrowing $4,000,000 from an Alabama corporation. It is quite foreseeable that upon the default of that loan, they would be held accountable on their contracts of guaranty in the State of Alabama. Applying the 'effects test' mandated by Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984); Alabama Waterproofing Co. v. Hanby, 431 So.2d 141
(Ala. 1983); Duke v. Young, 496 So.2d 37 (Ala. 1986), we determine that clearly the appellants/guarantors should have foreseen the effects of their contracts of guaranty in the State of Alabama in the event of a default on the promissory note. A clear and firm connection *Page 558 
exists between the execution of the promissory note, the subsequent default, the contracts of guaranty, and this litigation. Furthermore, it is clear that the signing of the contracts of guaranty for this loan gave appellants/guarantors the requisite 'fair warning' required by Burger King Co. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), which states:
 " 'By requiring that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign," Shaffer v. Heitner, 433 U.S. 186, 218, 53 L.Ed.2d 683, 97 S.Ct. 2569 [2587] (1977) (Stevens, J., concurring in judgment), the Due Process Clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit," WorldWide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 62 L.Ed.2d 490, 100 S.Ct. 559
[567] (1980).
 " 'Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this "fair warning" requirement is satisfied if the defendant has "purposefully directed" his activities at residents of the forum, Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774, 79 L.Ed.2d 790, 104 S.Ct. 1473 [1478] (1984), and the litigation results from alleged injuries that "arise out of or relate to" those activities, Helicopteros Nocionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, 80 L.Ed.2d 404, 104 S.Ct. 1868 [1872] [(1984)].'
"471 U.S. at 472, 105 S.Ct. at 2182."
544 So.2d at 157-58. See, also, Steel Processors, Inc. v. Sue'sPumps, Inc. Rentals, 622 So.2d 910 (Ala. 1993); Millette v.O'Neal Steel, Inc., 613 So.2d 1225 (Ala. 1992); Ex parte Lord Son Constr., Inc., 548 So.2d 456 (Ala. 1989).
We note that we have examined the cases relied on by Empire, including First United Bank of Mississippi v. First NationalBank of Atlanta, 255 Ga. 505, 340 S.E.2d 597 (1986); State ofMissouri ex rel. the Bank of Gering v. Schoenlaub,540 S.W.2d 31 (Mo. 1976); Washington Petroleum Supply Co. v. Girard Bank,629 F. Supp. 1224 (M.D.Pa. 1983); Jack O'Donnell Chevrolet, Inc.v. Shankles, 276 F. Supp. 998 (N.D.Ill. 1967); OrientalImports Exports, Inc. v. Maduro Curiel's Bank, N.V.,701 F.2d 889 (11th Cir. 1983); Sears Bank Trust Co. v. Luckman,61 Ill. App.3d 260, 18 Ill.Dec. 520, 377 N.E.2d 1156 (1978); andE.I.C., Inc. v. Bank of Virginia, 108 Cal.App.3d 148,166 Cal.Rptr. 317 (1980). These cases, which we find unpersuasive under the particular facts of this case, stand for the general proposition that a bank operating in one state is not subject to the jurisdiction of another state's courts merely by virtue of its forwarding checks for collection through normal banking channels or by virtue of a "correspondent relationship" with a bank in the forum state, i.e., a relationship in which " 'a forwarding bank . . . maintains a deposit account [with another bank] to whom it sends checks for forwarding and collection.' "Washington Petroleum Supply Co. v. Girard Bank, supra, at 1227, quoting Citizens State Bank v. Martin, 227 Kan. 580,587, 609 P.2d 670, 676 (1980). However, SouthTrust does not take the position that foreign banks in general are subject to the jurisdiction of Alabama courts merely because of their participation in the interstate check collection process. SouthTrust argues, and we agree, that Empire's contractual obligation to provide a service (to give notification of dishonored share drafts) to Alabama banks accepting share drafts drawn on MONY accounts was sufficient to subject it to the reach of Alabama's long-arm rule. Empire clearly benefited from its relationship with MONY, and MONY can do business in Alabama partly because its share drafts are accepted by Alabama banks. As previously noted, Empire should have foreseen, from its arrangement with MONY, that it would be sued in Alabama if it failed to provide the requisite notice and if that failure resulted in loss to an Alabama bank. Empire's position is thus similar to that of the Louisiana Insurance Guaranty Association and the South Carolina Property and Casualty Insurance Guaranty Association in Olivier v. Merritt Dredging *Page 559 Co., 979 F.2d 827 (11th Cir. 1992), cert. denied, 507 U.S. 983,113 S.Ct. 1577, 123 L.Ed.2d 145 and 508 U.S. 910,113 S.Ct. 2342, 124 L.Ed.2d 252 (1993). In Olivier, the plaintiff, a Louisiana resident, sustained personal injuries aboard a vessel in Alabama while employed by Merritt, a South Carolina corporation with its principal place of business in South Carolina. The plaintiff obtained a judgment against Merritt in Alabama, and, after Merritt and its insurer, Midland Insurance Company, had filed bankruptcy petitions, requested that the district court in Alabama issue writs of garnishment to both guaranty associations. The district court ruled that it lacked personal jurisdiction over the associations. The Eleventh Circuit Court of Appeals reversed, holding that "under the interstate arrangements made by the insurance industry to protect policyholders from losses resulting from the insolvency of an industry member, [the associations] consented to be subject to the same personal jurisdiction as one of their insolvent members, and . . . that judicial economy would best be served by keeping [the] litigation within that forum." 979 F.2d at 829. After noting that the Fourteenth Amendment would not permit a defendant to be subject to legal liability in a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, the court stated:
 "In the instant case, [the associations] are subject to legal liability in Alabama neither on account of random contacts nor on account of the unilateral activity of Midland Insurance. In forming the state insurance guaranty associations to avoid federal legislation creating a national guaranty fund, the insurance industry had to anticipate that the guaranty associations would be haled into the same courts where their insolvent members would have been subject to the reach of due process. Thus, [the associations] consented to service of process in Alabama in this case."
979 F.2d at 833. As to whether jurisdiction in Alabama over the associations would comport with "fair play and substantial justice," the court noted:
 "Once a court has decided that a defendant has established minimum contacts within a forum state, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.' Burger King [v. Rudzewicz], 471 U.S. at 476, 105 S.Ct. at 2184. As the Supreme Court has stated, other factors may serve to establish the reasonableness of personal jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. Burger King, 471 U.S. at 477, 105 S.Ct. at 2184. Some of these factors include: the plaintiffs interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and a shared interest of the several states in furthering fundamental substantive social policies. Id.
 "In addition, as the Supreme Court of the United States has noted '. . . modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity.' McGee [v. International Life Ins. Co.], 355 U.S. at 222-23, 78 S.Ct. at 201. The Supreme Court subsequently stated that the historical developments noted in McGee have only accelerated in the generation since that case was decided. World-Wide Volkswagen [Corp. v. Woodson], 444 U.S. at 293, 100 S.Ct. at 565. Requiring adjudication in Alabama will not impose a substantial burden on [the associations].
 "It would be unduly burdensome, however, to require Oliver to seek coverage for his claim from [the Louisiana association] in Louisiana courts and from [the South Carolina association] in South Carolina courts. Such a requirement would spread thin his resources and would hamper Oliver's ability to obtain quick, convenient, and effective relief."
979 F.2d at 834.
There is nothing random, fortuitous, or attenuated about Empire's voluntary undertaking to timely notify Alabama banks of any share drafts dishonored by MONY, an institution over which the trial court apparently has jurisdiction. Empire is obviously aware *Page 560 
of which banks have forwarded share drafts for collection. We can see no logic in allowing Empire to use the interstate nature of the banking industry as a shield against liability in Alabama — to, in effect, "stick its head in the sand" and ignore the ramifications of its actions on Alabama banks accepting share drafts drawn on MONY accounts. Lending support to our conclusion in this regard is the fact that Empire, in dealing with SouthTrust, arguably had available to it the benefit and protection of Alabama law. Under Ala. Code 1975, §7-4-207 (part of Alabama's version of the Uniform Commercial Code), SouthTrust, as a "collecting bank," makes certain warranties to "the payor bank or other payor who in good faith pays or accepts the item." Had those warranties been breached, it is at least reasonable to conclude that Empire would have had the benefit and protection of this Alabama law. Furthermore, we note that SouthTrust has an interest in obtaining convenient and effective relief; that Alabama has an interest in providing a forum to its residents for the adjudication of disputes occurring within its borders, see, e.g., Edy Clover Productions, Inc. v. National BroadcastingCo., 572 F.2d 119 (3d. Cir. 1978); and that requiring adjudication of SouthTrust's claims in Alabama should not impose a substantial burden on Empire.
For the foregoing reasons, the judgment of the Court of Civil Appeals, insofar as it affirms the trial court's dismissal of Empire, is reversed and the case is remanded for further proceedings, or an order, consistent with this opinion.
1940337 AFFIRMED.
1940360 REVERSED AND REMANDED.
MADDOX, ALMON, SHORES, COOK, and BUTTS, JJ., concur.
[1] Section 229.33(a) provides in pertinent part:
 "Requirement. If a paying bank determines not to pay a check in the amount of $2,500 or more, it shall provide notice of nonpayment such that the notice is received by the depositary bank by 4:00 p.m. (local time) on the second business day following the banking day on which the check was presented to the paying bank. . . . Notice may be provided by any reasonable means, including the returned check, a writing (including a copy of the check), telephone, Fedwire, telex, or other form of telegraph."
Under the regulations, Empire appears to be a "paying bank," SouthTrust appears to be a "depositary bank," and a "check" appears to equate with a share draft.
Section 229.38(a) provides in part:
 "A bank that fails to exercise ordinary care or act in good faith under this subpart may be liable to the depositary bank . . . [for] the amount of the loss incurred, up to the amount of the check, reduced by the amount of the loss that party would have incurred even if the bank had exercised ordinary care. A bank that fails to act in good faith under this subpart may be liable for other damages, if any, suffered by the party as a proximate consequence.