THOMPSON, Judge.
Emil D. Gunaea d/b/a Pro Search/Pro Personnel (“Pro Search”) filed a complaint on August 14, 1996, against Prime, Inc., Bruce Whitkind, Charles Barniv, Earl Thomas Paige, Jr., and some fictitiously named defendants. The complaint seeks damages based on fraud, breach of contract, and other causes of action. Prime, Inc., and Whitkind filed a motion to dismiss, on September 24, 1996. Barniv filed an identical motion on October 1,1996. These motions claimed that jurisdiction and venue were improper, asserting that these defendants .had insufficient contacts with the State of Alabama. On October 22, 1997, the trial court entered an order dismissing Prime Inc., Whitkind, and Barniv (hereinafter referred to together as “Prime”) without prejudice, on the grounds of lack of personal jurisdiction and entered a default judgment against Paige. Pro Search appealed to the supreme court, which transferred the appeal to this court.
Gunaea is the president and sole proprietor of Pro Search, an employment and recruitment agency in Mobile County. Whit-kind and Barniv are physicians. They reside in Fort Walton Beach, Florida, and are the principals of Prime, Inc. The claim involves the recruitment of Paige, who was a resident of Opp, Alabama, at the time of the alleged misdeeds. Pro Search contends that Prime independently hired Paige, in order to avoid paying Pro Search a commission after Pro Search had recruited Paige for Prime’s potential employment.
The determination of whether a court has personal jurisdiction over a nonresident defendant must be made on a consideration of all of the relevant facts and circumstances in the particular ease. Ex parte MONY Federal Credit Union, 668 So.2d 552, 554-55 (Ala.1995).
. [2] Rule 4.2(a)(2)(A)-(I), Ala.R.Civ.P., sets forth the contacts with this state that will be sufficient to form the basis for in personam jurisdiction over a nonresident. This rule is Alabama’s equivalent of a “long arm statute,” and its reach has been held to extend to the limits permitted by due process. Alabama Waterproofing Co. v. Hanby, 481 So.2d 141, 145 (Ala.1983). Subdivision (I) allows jurisdiction over a person who has some “minimum contacts” with Alabama sufficient to subject the person to a lawsuit in this state; this is generally considered a catchall provision for the purpose of establishing in personam jurisdiction. Corcoran v. Corcoran, 353 So.2d 805, 808 (Ala.Civ.App.1978). Two essential criteria for a party to establish personal jurisdiction over a defendant through the “minimum contacts” catchall provision are 1) that the maintenance of *813 the action must not offend “traditional notions of fair play and substantial justice,” International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945), and 2) that the “quality and nature” of the defendant’s activities in the state must have been such that it is “reasonable and fair” to require him to defend there. Kulko v. Superior Court of California, 436 U.S. 84, 92, 98 S.Ct. 1690, 1696-97, 56 L.Ed.2d 132, 141 (1978).
Our supreme court has stated that in a proper analysis of the limits of due process “we must necessarily examine all the relevant facts and attendant circumstances of the case.” Shrout v. Thorsen, 470 So.2d 1222, 1224 (Ala.1985). “There must be a clear, firm nexus between the acts of the defendant and the consequences complained of in order to establish the necessary contacts.” Duke v. Young, 496 So.2d 37, 39 (Ala.1986). Alabama courts use a twofold analysis to determine whether personal jurisdiction exists over a nonresident defendant: “1) the determination of whether it is foreseeable to that nonresident defendant that he will be sued in this state; and 2) the determination of the degree of contact that the nonresident defendant has with this state.” Kittle Heavy Hauling v. Gary A. Rubel, Inc., 647 So.2d 743, 744 (Ala.Civ.App.1994).
The record reflects that Pro Search first contacted Prime in February 1994. On July 19, 1994, Prime, by a fax to Pro Search, requested that Gunaca telephone “Doctor Whitkind on his priv. line at his office after 2:00 p.m .... inasmuch as he CANNOT reach you.” Gunaca allegedly telephoned Whitkind and had conversations with him on July 19 and July 20 concerning the “urgent need for an occupational therapist or physical therapist to work for Prime.” On July 20, Gunaca sent a letter to Whitkind, enclosing for his signature a one-year contract and a fee schedule. The letter memorialized his telephone conversations with Whitkind, stating that the parties had reached an agreement and that the fee would be 20% of the employee’s first year’s salary. Prime did not sign that contract.
In opposition to Prime’s motion to dismiss, Pro Search filed Paige’s deposition along with Pro Search and Prime’s telephone records. Paige testified, in his deposition, that on September 13, 1994, Pro Search arranged an appointment for Paige to interview for a position as a physical therapist with Prime on September 18,1994. On September 15 or 16, Paige saw an advertisement in an Opp, Alabama, newspaper seeking a physical therapist for a waterfront clinic. In response to that advertisement, he telephoned the number provided and talked with Adene Haigler at Prime. In talking with Haigler, Paige realized that this was the same clinic at which Pro Search had scheduled his interview for September 18. Paige further testified that Haigler told him to “cancel the appointment ... and come down anyway and talk to them.” Paige sent Pro Search notice on September 16 that he was canceling the appointment with Prime. On September 20, Paige went to Prime and met with Barniv, Whitkind, and Haigler. Paigé said Whitkind expressed some concern as to whether Paige had actually signed a contract with Pro Search. Paige confirmed that everyone at the meeting knfew that he was the same recruit that Pro Search had referred.
Paige began working for Prime about November 1, 1994. He alleged that at some point Haigler started screening his telephone calls. Paige said “[ejvidently, Rick [Pro Search] had been trying to get some information from them as to whether or not I had come to work for them, and she [Haigler] was denying it. And it got to the point that she would not allow me to have any calls at work.” Paige ended his employment at Prime in April 1995.
The telephone records reflect numerous telephone calls and faxes between July and September 1994, from Pro Search to Whit-kind’s home, Bamiv’s home, Prime, and Paige. These records reflect approximately 90 telephone calls totaling over 561 minutes. The telephone records also reflect approximately 31 telephone calls and faxes from Prime to Pro Search and Paige during the same period.
We find that Prime’s contacts with this state were sufficient to subject Prime to in personam jurisdiction by Alabama courts *814 under the provisions of Rule 4.2(a)(2)(I), Ala. R. Civ. P. The evidence presented by Pro Search concerning Prime’s alleged attempts to avoid paying Pro Search a commission for its recruitment and referral of Paige for Prime’s employment establishes minimum contacts. Paige testified that Barniv, Whit-kind, and Haigler were all aware that Paige was the same individual whom Pro Search had referred to them for potential employment. Paige said he was specifically questioned during his interview with Prime as to whether he had signed a contract with Pro Search. Paige further testified that Haigler urged him to cancel the employment interview with Prime that Pro Search had arranged. Paige accepted employment with Prime two days after the date of the canceled employment interview scheduled by Pro Search. Paige said that while he was employed by Prime his telephone calls were screened by Haigler in an apparent attempt to keep Pro Search from discovering Paige’s employment.
It is clear that Prime had sufficient contacts with an Alabama resident to subject it to in personam jurisdiction of Alabama courts. There is a firm nexus between Prime’s actions and the claims alleged in Pro Search’s complaint. Considering the nature of Prime’s activities, Prime should have reasonably foreseen that it might be required to defend an action in Alabama. Our supreme court has held that intentional and tortious actions expressly aimed at an Alabama resident will subject the non-resident to suit in Alabama. Sudduth v. Howard, 646 So.2d 664, 668 (Ala.1994).
Additionally, if it were established that an oral contract existed authorizing Pro Search to recruit prospective employees for Prime, it could be evidence of a business transaction in this state by Prime subjecting it to in per-sonam jurisdiction of Alabama courts under Rule 4.2(a)(2)(A), Ala. R. Civ. P. However, because we find evidence to subject Prime to in personam jurisdiction under Rule 4.2(a)(2)(I), we need not reach this issue.
It was error for the trial court to dismiss Pro Search’s complaint for lack of personal jurisdiction. Therefore we reverse the dismissal and remand the cause for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
ROBERTSON, P.J., and YATES, MONROE, and CRAWLEY, JJ., concur.