The plaintiffs, S.B. Thompson and 28 other persons ("the neighbors"), live on property that is adjacent to a "Superfund"[1] site at the former location of a battery dismantling facility operated by Gene T. Jones Tire Battery, Inc. The neighbors sued Jones and numerous fictitious defendants, seeking damages for personal injury and property damage caused by lead poisoning of their bodies and contamination of their property with lead that they allege had escaped from the Jones site. Shortly thereafter, the neighbors amended their complaint to substitute 34 named defendants, including Taracorp, Inc., and Seitzingers, Inc.[2] The complaint, as last amended, included counts alleging negligence, trespass and nuisance, strict liability for engaging in abnormally dangerous activities, "negligent selection of independent contractors," and "negligent delivery of hazardous materials to an incompetent," as well as a count requesting injunctive relief.
Taracorp and Seitzingers filed a motion to dismiss based upon lack of personal jurisdiction. The trial court allowed the neighbors to conduct discovery, limited to the issue of personal jurisdiction. After oral argument, the trial court granted the motion to dismiss, and the neighbors appealed. Our supreme court transferred the appeal to this court pursuant to § 12-2-7(6), Ala. Code 1975.
The trial court, in a comprehensive and well-reasoned opinion, held that the State of Alabama lacked personal jurisdiction over Taracorp and Seitzingers. The pertinent portions of that opinion are quoted here:
 "Having heard argument from counsel for both parties on August 11 and having considered the record and briefs submitted, the Court finds as follows on the question of whether Taracorp (or Seitzinger's, Inc., as it was formerly called) had sufficient minimum contacts with the State of Alabama for personal jurisdiction in this case.
 "1. Taracorp's/Seitzinger's Transactions with Jones. Under Rule 4.2(a) of the Alabama Rules of Civil Procedure, service of process on a nonresident defendant is appropriate when that defendant has sufficient contacts with the state under part (a)(2) of the rule. The Court first looks at whether personal jurisdiction was created by the specific types of contacts with Alabama listed in Rule 4.2(a)(2)(A) through (H).
 "Taracorp is a corporation with its principal place of business in Atlanta, Georgia. It has been a holding company since a 1985 reorganization. Before that Taracorp engaged in secondary lead smelting in Atlanta. Taracorp was called 'Seitzinger's, Inc.,' until November 1978, when it was renamed 'Taracorp, Inc.' However, the division of Taracorp operating the smelter business continued to do business as 'Seitzingers.' The parties agree that it was this entity *Page 154 
(Taracorp/Seitzinger's) which had the transactions with Gene Jones and/or Gene Jones Tire Battery in Birmingham, which are the subject of this order. Thus 'Taracorp, Inc.' and 'Seitzinger's, Inc.' are the same corporation for purposes of this ruling and are referred to herein as 'Taracorp' or 'Taracorp/Seitzinger's.'
 "According to the record, the facts of Taracorp's contacts with Alabama are as follows. Taracorp has never had any offices or operations in Alabama. Prior to the 1985 reorganization, in 1984 and January 1985, when winding down its recycling operations, Taracorp sold its stocks of used batteries to customers such as Gene Jones and his company, Gene Jones Tire Battery, located in Alabama. The volume was about 3 million pounds. Taracorp never sent vehicles to the Jones site, and never shipped batteries, other products, or any wastes to the Gene Jones facility in Birmingham. Instead, according to Mr. [Stanton] Sobel, [one of Taracorp's corporate officers,] Gene Jones sent trucks and drivers belonging to Jones or third-party transporters to Atlanta to pick up the batteries from Taracorp. Jones then mailed checks in payment for the batteries to Taracorp in Atlanta. Taracorp did not have a contract with Jones or his company for these sales, and did not give Jones instructions as to what to do with the batteries or where to take them.
 "Taracorp also purchased lead from Jones in 1981 and 1984. Again, Jones shipped the material from Birmingham to Taracorp's Atlanta facility. Taracorp also had no contract with Jones for these purchases and paid Jones by check sent by mail from Atlanta. Mr. Sobel testified that no employee or truck of Taracorp ever came to Alabama.
 "There is no indication in the record that either the purchases of batteries by Gene Jones from Taracorp or the sale of goods by Gene Jones to Taracorp in the early 1980s arose from any solicitation by Taracorp of business in Alabama. Although plaintiffs assert that Taracorp initiated the sales, the only testimony in the record is to the contrary: Gene Jones testified twice that he did not know whether he or Taracorp initiated these transactions. Furthermore, Stanton Sobel testified that to his knowledge, Taracorp does not advertise in Alabama. Plaintiffs have claimed that Taracorp advertises in the Thomas Register, which is 'distributed throughout Alabama,' at all times relevant to this case. Plaintiffs have not provided the Court with any testimony or documentation to support this claim concerning the use or distribution of the Thomas Register. Plaintiffs furnished the Court with what appears to be copies of Thomas Register listings showing Taracorp's name, although no affidavit or other authentication was provided as required by Rule 56. However, in questioning Mr. Sobel, counsel for plaintiffs described the Thomas Register as an 'encyclopedia of all kinds of various business.' The Court would be reluctant to find that a listing in the Thomas Register alone constitutes 'solicitation' in Alabama sufficient to invoke personal jurisdiction. In any case, the Thomas Register appears irrelevant to the transactions involving the Jones site, because Gene Jones specifically testified that even though he had a copy of the Thomas Register (whether he had it at the time of these transactions is not specified), he never used the Thomas Register. Therefore, based on the record, the Court does not find that a listing in the Thomas Register, without more, constitutes solicitation of business in Alabama sufficient to create personal jurisdiction in this case.
 "Based on the deposition testimony and affidavits in the record, the Court finds that Taracorp's sale of batteries to Jones in Georgia in 1984-85, and Taracorp's purchases from Jones in 1981 and 1984, where Jones shipped goods to Taracorp in Atlanta, are insufficient to constitute 'transacting any business in this state' under Rule 4.2(a)(2)(A). These contacts appear too isolated, too remote in time, and too unrelated to the subject matter of this lawsuit to meet the standards of constitutional due process, as will be further discussed in part 2 below.
 "As to Rule 4.2(a)(2)(D), 'causing tortious injury or damage in this state by an act or omission outside this state if the *Page 155 
person regularly does or solicits business . . .,' the Court finds two reasons why personal jurisdiction over Taracorp is not created by this subsection. First, the terms 'regularly does or solicits business' are inapplicable to Taracorp, which has not had any business transactions in Alabama for over a decade, since early 1985 (transactions of Taracorp's subsidiaries are discussed below). Second, Taracorp's transactions are not the cause of the 'tortious injury or damage' complained of in this case. The damages complained of by plaintiffs arise from the processing or alleged mismanagement of materials at the site by Jones. (These issues are discussed below in terms of the foreseeability and nexus inquiries required by our caselaw.)
 "As to the other listed types of contact in Rule 4.2(a)(2), Taracorp did not contract to supply goods or services in Alabama (Rule 4.2(a)(2)(B)), or cause tortious injury or damage by an act or omission in Alabama. Rule 4.2(a)(2)(C). Also, according to Mr. Sobel, Taracorp itself has never owned any real or personal property in the state of Alabama, has never had bank or savings accounts in the state of Alabama, has never entered into contracts to insure any person or anything in Alabama, and has never had any contact with, or any knowledge of, any of the plaintiffs in this litigation. As Taracorp does not regularly do or solicit business in Alabama and owns no real property in the state, neither Rule 4.2(a)(2)(D), (E), nor (F) applies; nor are the types of contacts listed in Rule 4.2(a)(2)(G) or (H) applicable (contracts to insure, and marital relationships).
 "2. Foreseeability and 'Nexus.' Not having found sufficient contacts for personal jurisdiction under Rule 4.2(a)(2)(A) through (H), the Court then inquires, under the catch-all provision of the rule, 4.2(a)(2)(I), as to whether it is otherwise fair and reasonable, under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, to require Taracorp to come to Alabama to defend this action.
 "Whether a court has personal jurisdiction over a nonresident defendant is a determination which must be made on a case-by-case basis after considering all of the relevant facts and circumstances. Steel Processors, Inc. v. Sue's Pumps, Inc. Rentals, 622 So.2d 910 (Ala. 1993); Kittle Heavy Hauling v. Gary A. Rubel, Inc., 647 So.2d 743 (Ala.Civ.App. 1994). In Keelean v. Central Bank of the South, 544 So.2d 153, 156
(Ala. 1989), the Alabama Supreme Court stated the following test for this determination:
 " 'Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), requires that a nonresident defendant have certain minimum contacts with a state in order for that state's courts to acquire personal jurisdiction over that defendant. A twofold analysis is used in this state in determining whether personal jurisdiction exists over a nonresident defendant:
 " '(1) the determination of whether it is foreseeable to that nonresident defendant that he will be sued in this state; and (2) the determination of the degree of contact that the nonresident defendant has with this state.'
 "These inquiries — foreseeability and a sufficient degree or nature of minimum contacts — are necessary to provide constitutional due process:
 " '[T]he relevant facts and attendant circumstances must be examined and the relationship among the defendant, the forum, and the litigation analyzed to determine if the defendant has sufficient "minimum contacts" so that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " '
 "Steel Processors, Inc. v. Sue's Pumps, Inc. Rentals, 622 So.2d 910, 911 (Ala. 1993), citing Dillon Equities v. Palmer Cay, Inc., 501 So.2d 459, 461 (Ala. 1986), quoting International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154
[158], 90 L.Ed. 95 (1945).
 "In Steel Processors, the Alabama Supreme Court emphasized the importance of the inquiry:
 " 'The foreseeability of the consequences of the defendant's activities is crucial to *Page 156 
this analysis. To establish the necessary contacts, there must be a firm nexus between the acts of the defendant and the consequences complained of. Duke v. Young, 496 So.2d 37, 39
(Ala. 1986). "The fundamental question is, did the defendant act in such a manner that he reasonably ought to anticipate the direct consequences of his actions to be felt by another person residing in another state?" '
"Steel Processors, 622 So.2d at 911-12.
 "The Court must first determine whether it was foreseeable to Taracorp that, based on its acts, it could reasonably anticipate that the direct consequences of its actions would be felt in Alabama. Steel Processors, 622 So.2d 910; SouthTrust Bank v. Empire Corporate Federal Credit Union, [668 So.2d 548] (Ala.Civ.App. 1994), [aff'd in part and rev'd in part, Ex parte MONY Federal Credit Union, 668 So.2d 552 (Ala. 1995)]. The fundamental question is whether there is 'a clear, firm nexus between the acts of the defendant and the consequences complained of in order to establish the necessary contacts.' Duke v. Young, 496 So.2d 37, 39 (Ala. 1986); Steel Processors, 622 So.2d at 911-12; Sudduth v. Howard, [646 So.2d 664] (Ala. 1994).
 "Taracorp had no contract with Jones requiring that Jones undertake any activities at the Jones site or, indeed, in Alabama. Taracorp simply sold used batteries to Jones in Georgia in late 1984-January 1985 and bought lead from Jones for delivery to Georgia in 1981 and 1984. As the record indicates, Jones handled shipping in both cases; Taracorp did not give Jones instructions as to what to do with the batteries. Some of the battery sales and purchases of lead appear to have been simultaneous. However, Gene Jones testified that the transactions were separately handled as separate purchases and sales, as opposed to a unified transaction involving conversion of batteries to lead. Taracorp did not know where Jones took the batteries, has never sent vehicles or employees to the Gene T. Jones Battery Tire site in Birmingham, and has had no contact and no dealings with any of the plaintiffs in this action. Furthermore, Taracorp had no information or knowledge concerning any problems or regulatory compliance issues involving Gene Jones or his place of operation.
 "It does not appear to the Court that there is a firm nexus between Taracorp's sales of batteries in Georgia and purchases, in 1981 and 1984, of lead from Jones and the activities at the Gene Jones Tire Battery site related to battery recycling which form the basis of the complaint. Based on the evidence presented to it, the Court finds that it was not foreseeable to Taracorp that its acts would cause it to be sued in Alabama for the following reasons. The complaint in this action includes state common-law claims by neighbors of the Gene T. Jones Battery Tire site for personal injury and property damage under theories of negligent or wanton storage, management, transport or disposal of batteries, and trespass and nuisance by substances disposed on the Gene Jones Tire Battery site; and abnormally dangerous activities involving the generation, storage, disposal, management, release, purchase, and transportation of the batteries. Such acts by Jones, however, do not form a basis for jurisdiction over Taracorp. Steel Processors, Inc. v. Sue's Pumps, Inc. Rentals, 622 So.2d 910 (Ala. 1993), is instructive on this point. In that case, the Supreme Court found no jurisdiction existed over a Florida corporation despite the plaintiff's fabrication of materials in Alabama for use in a Florida project, noting:
 " 'Due process concerns remind us that "[t]he critical relationship is that 'among the defendant, the forum, and the litigation.' " Scullin Steel [Co. v. National Ry. Utilization Corp., 676 F.2d 309,] 313 [(8th Cir. 1982)], quoting Shaffer v. Heitner, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977). The fabrication of materials in Alabama by Steel Processors represents "unilateral activity of those who claim some relationship with a nonresident defendant [and] cannot [alone] satisfy the requirement of contact with the forum State." Hanson *Page 157 v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239-40, 2 L.Ed.2d 1283 (1958).'
 "Steel Processors, n. 2. In other words, Jones's
alleged 'unilateral activity' at the site cannot satisfy the requirement of contacts by Taracorp in this case.
 "Second, under Keelean and Steel Processors, t`e Court must examine the degree of contact that Taracorp has had with this state. The record indicates such contacts were too isolated and limited to warrant jurisdiction, as demonstrated by the deposition testimony of Mr. [James] Taratoot, [another of Taracorp's corporate officers,] Mr. Sobel, and Mr. Jones, and the affidavits of Mr. Taratoot and Mr. Sobel. Taracorp does no business within the State of Alabama. It buys no products from Alabama. As stated earlier, it has no customers in Alabama, does not advertise or solicit business in Alabama, has no employees in Alabama, owns no real or personal property, and has no bank accounts or savings accounts in Alabama. The sales by Taracorp to Jones in 1984 and early 1985 were part of the winding up of its operations, as opposed to routine or regular transactions. The purchases made by Taracorp from Jones in 1981 and 1984 do not constitute a sufficient foundation for jurisdiction. Steel Processors, supra; Kittle Heavy Hauling v. Gary A. Rubel, Inc., 647 So.2d 743
(Ala.Civ.App. 1994); see also Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16, 104 S.Ct. 1868, [1872-73] 80 L.Ed.2d 404
(1984) (purchases in forum state by nonresident defendant were insufficient to confer general jurisdiction). Neither Taracorp's receipt of checks from Jones for material shipped F.O.B. from Georgia, nor Taracorp's payment of checks to Jones, warrants personal jurisdiction. Steel Processors, supra. These activities do not constitute 'substantial' and 'continuous and systematic' contacts with the state of Alabama for general jurisdiction over Taracorp. Murray v. Alfab, Inc., 601 So.2d 878 (Ala. 1992). Nor are these transactions sufficiently related to the cause of action to warrant specific jurisdiction. Id.
 "Nor does the record demonstrate 'solicitation' by Taracorp with respect to these transactions. Plaintiffs have cited the Court to a number of Alabama cases imposing jurisdiction based on solicitation of Alabama customers by the foreign defendant. The Court finds these cases inapplicable here. For instance, Atlanta Auto Auction, Inc. v. G G Auto Sales, Inc., 512 So.2d 1334 (Ala. 1987), cited by plaintiffs, involved a 'continuous and systematic' course of conduct involving the use of the mails to solicit Alabama customers — including the plaintiff — for sales to be held in Georgia. No such course of conduct has been shown here. Similarly, plaintiffs cite Lowry v. Owens, 621 So.2d 1262 (Ala. 1993), which involved solicitation of business by the foreign defendant and advertising broadcast in Mississippi that reached Alabama; however, the record fails to show that Taracorp solicited Jones or directed advertising into Alabama as did the defendant in Lowry. As to Brick Warehouse, Ltd. v. Sunshine Homes, Inc., 481 So.2d 860 (Ala. 1985), that case involved initial contact by the foreign defendant who placed 'the first of many orders' with the plaintiff for goods. Plaintiffs did not demonstrate that Taracorp initiated contacts with Gene Jones; but, more importantly, Brick Warehouse involved specific jurisdiction over the foreign defendant because the cause of action (failure to pay the plaintiff, who sold the goods) was intimately related to the foreign defendant's contacts with the state. Consequently, the cases cited by plaintiffs on the 'solicitation' issue are inapplicable here, where no solicitation by Taracorp has been established.
 "Based on the record before the Court, the 'clear, firm nexus' between the acts of Taracorp and any consequences to the plaintiffs in Alabama does not exist in this case. The Court finds, based on the lack of foreseeability to Taracorp that it would be sued in this state based on these transactions, and based on the limited nature of Taracorp's contacts with Alabama as shown by the record, that Taracorp lacks sufficient minimum contacts with Alabama for personal jurisdiction to obtain in this case. *Page 158 
 "3. Acts of Taracorp's Subsidiaries. Plaintiffs have asserted that even though Taracorp has not had any business transactions in Alabama since the transactions with Gene Jones in the early 1980s, its subsidiaries make sales in the state and that jurisdiction over Taracorp exists by virtue of the acts of these subsidiaries. The Court finds that the acts of these subsidiaries in Alabama are insufficient to create personal jurisdiction over Taracorp in this case. Taracorp/Evans, Inc. (formerly known as Evans Metal, Inc. and called 'Evans' herein), a subsidiary corporation, is a separate corporation that has had Alabama customers. Taracorp/IMACO, Inc. ('IMACO'), is another subsidiary. Neither has had anything to do with the Gene Jones site. Nonetheless, plaintiffs claim that contacts with Alabama by these two subsidiaries constitute contacts by Taracorp with Alabama, under theories of agency.
 "The Court's analysis is twofold. The first question is whether the parent and subsidiaries are separate entities or whether the parent so controls the subsidiaries that acts of the subsidiaries should be attributed to the parent for purposes of determining whether the subsidiaries have sufficient current minimum contacts with the state of Alabama, as agents of the parent, for the Court to have personal jurisdiction over the parent. Based on evidence in the record, neither Evans nor IMACO appears to be an 'alter ego' of Taracorp. An appropriate inquiry is that set forth in Ex parte Baker, 432 So.2d 1281
(Ala. 1983), a venue case, where the plaintiff claimed a parent corporation was 'doing business' in Jefferson County by the acts of its subsidiary corporation, and that the parent's relationship with its subsidiary was not limited to that of a shareholder of the stock of the respective corporations, 'but that it exercises general management and control over the affairs of these corporations.' Ex parte Baker, at 1283. The Supreme Court found that there was sufficient evidence to support the trial court's findings that 'the business affairs of [the subsidiary] are conducted in a manner that is appropriate to its separate purposes and functions, without domination or any excessive degree of control by [the parent], and that [the subsidiary] cannot properly be regarded as the "alter ego," or a mere "instrumentality," of its corporate parent. . . .' Ex parte Baker, at 1284. In Ex parte Baker, the record indicated that while officers of the parent acted as directors of the subsidiary, they were not involved in day-to-day operations. Plaintiffs have failed to provide the Court with information establishing that Evans and IMACO are 'alter egos' of Taracorp. To the contrary, the record indicates that these are 'separate, individual corporations'; 'Taracorp does not act through its subsidiaries; rather, each subsidiary takes its own actions.' Sobel Supp.Aff. at ¶ 6, 7. Their officers and directors are not coextensive with Taracorp's.
 "Plaintiffs have relied on Ex parte Charter Retreat Hosp., Inc., 538 So.2d 787 (Ala. 1989), another venue case, where the Supreme Court did find venue existed on the basis that the subsidiary was doing business in Jefferson County 'as agent' of the parent corporation. Charter Retreat did not hold that any act by a subsidiary will constitute 'doing business' by the parent. Charter Retreat, at 790. However, a key factor in that case was testimony that any profits of the subsidiary were directed to the parent corporation. Ex parte Charter Retreat Hosp., Inc., at 791. Here, on the other hand, the record shows that Evans and IMACO do not pass along their profits to Taracorp. The record indicates that Evans and IMACO do pay interest to Taracorp on loans made by Taracorp to its subsidiaries. However, neither the making of such loans nor the receipt of interest on the loans constitutes sufficient control by the parent company under Alabama law to warrant the creation of personal jurisdiction over Taracorp by virtue of any transactions these subsidiaries may have had in the state. Krivo Indus. Supply Co. v. National Distillers Chem. Corp., 483 F.2d 1098 (5th Cir. 1973) (applying Alabama law and holding that loans by a parent to subsidiary did not constitute sufficient *Page 159 
control to impose liability on parent).
 "Second, analysis of the contacts of the subsidiaries themselves with Alabama under the test of Keelean v. Central Bank of the South and Steel Processors, discussed above, indicates that constitutional due process does not warrant imposition of personal jurisdiction over Taracorp. Neither company has a place of business in Alabama. The evidence does not indicate that either solicits business in Alabama. Although plaintiffs assert in their Memorandum that Evans' telemarketers solicit in Alabama, the record is to the contrary. There is no Evans salesman in Alabama. Moreover, the record does not show, and indeed plaintiffs do not claim, that either of these subsidiaries has had any transactions involving the Jones site or these plaintiffs. Evans sells sheet lead for use in the plumbing industry and for radiation shielding, for instance from X-rays. Some is sold to customers in Alabama. IMACO sells lead-free solders. Again, some is sold to customers in Alabama. However, neither Evans nor IMACO has had any sales which have anything to do with the Gene Jones site.
 "Under the foreseeability and minimum contacts analysis as applied to these subsidiaries, based on the record before me, I find that transactions by Evans and IMACO do not warrant the imposition of personal jurisdiction over Taracorp. 'To establish the necessary contacts, there must be a firm nexus between the acts of the defendant and the consequences complained of.' Duke v. Young, 496 So.2d 37, 39 (Ala. 1986). There is no connection between sales by Evans and IMACO and anything of which plaintiffs complain concerning the Gene Jones site. It would not be foreseeable to Evans, IMACO, much less to Taracorp, that the direct consequences of the sales of lead shielding or lead-free solder could result in liability for activities at the Gene Jones site. It would not be foreseeable to Evans, IMACO or Taracorp that such sales could result in Taracorp being haled into court in Alabama with respect to the Gene Jones site.
 "The Court finds, therefore, that the acts of Taracorp's subsidiaries in Alabama are insufficient to warrant the imposition of personal jurisdiction over Taracorp in this case.
 "4. Foreseeability and CERCLA. Plaintiffs claim that Taracorp's involvement in CERCLA claims at this site and at other sites demonstrates that this lawsuit was foreseeable to Taracorp. The Court has two concerns about this. First, CERCLA liability is a federal statute of sweeping scope which imposes an extraordinarily broad, 'no-fault' obligation for response costs without regard to the traditional fault or causation concepts of tort liability. It imposes retroactive and strict liability on parties that either own, operate, or sent hazardous substances to a site that is ultimately found to contain hazardous substances. United States v. Monsanto Co., 858 F.2d 160, 170 n. 17, 174 (4th Cir. 1988), cert. denied, 490 U.S. 1106
[109 S.Ct. 3156, 104 L.Ed.2d 1019] (1989). The strict liability policy served by CERCLA is designed to speed clean-up of sites, and imposes that requirement regardless of the constitutional protections guaranteed by Alabama state courts with respect to the 'minimum contacts' analysis. Thus a single transaction involving sales of batteries by an out-of-state seller to Gene Jones may result in CERCLA involvement without amounting to 'sufficient contacts' for state court jurisdiction in this case under Rule 4.2(a)(2). If this Court were to hold that merely being involved in some way in the CERCLA issues at the Gene Jones site amounted to sufficient contacts with Alabama for personal jurisdiction to exist, the result would be to deny the constitutional protections accorded foreign defendants by the state of Alabama, which are embodied in the case-by-case examination of the 'relevant facts and attendant circumstances' required in order to see if the defendant has sufficient minimum contacts so that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' Steel Processors, supra.
 "Second, the Court is concerned that, even after an opportunity for substantial discovery, plaintiffs have not supported in *Page 160 
the record their assertion that this lawsuit was foreseeable to Taracorp because of Taracorp's involvement in three other CERCLA sites. According to Stanton Sobel's affidavit, 'Taracorp could not and did not foresee that it would be sued in the state of Alabama for the sale of used batteries in the state of Georgia.' He further testified that at the time of Taracorp's transactions with Jones, Taracorp had no knowledge of any regulatory compliance issues involving the Gene Jones site. Plaintiffs claim that at the time Taracorp was selling batteries to Jones, it 'was already implicated in at least two other cases where battery cracking operations contaminated nearby residences with lead. A third case, involving Sapp Battery Service, Inc., . . . may have involved Taracorp by 1985.' Plaintiffs have attached copies of decisions involving two other CERCLA sites. However, despite the opportunity to depose both James Taratoot and Stanton Sobel (and the opportunity to redepose Stanton Sobel), plaintiffs have not provided the Court with evidence which contradicts the affidavit of Stanton Sobel on the foreseeability of this lawsuit. Furthermore, the record indicates that Taracorp was notified about the Sapp matter by EPA in the late 1980s, well after the transactions with Jones. Nothing in the record supports plaintiffs' claim that any Taracorp involvement or participation at these other sites was of such a nature or occurred at such times that this lawsuit was foreseeable to Taracorp when it sold batteries to Jones.
 "Plaintiffs also allege in the June 27, 1995 brief that the regulations of the Alabama Department of Environmental Management (ADEM) dating back to 1986 'provide that lead is hazardous.' Plaintiffs then state that '[c]ommon sense indicates that, if you ship a hazardous material to a place, you may be sued by someone from that place.' However, the cited regulation concerning spent batteries, which bears a date of 1993, does not contain such a statement. Instead, the regulations specifically exclude from coverage the activities of those such as Taracorp who merely sold whole batteries to Jones. ADEM Admin. Code R. 335-14-7(1)(c) and (4)(c). The regulation, by its terms, applies to the activities of those who, like Gene Jones, reclaim spent batteries or who transport or manage components of batteries. If the regulation had existed when Taracorp's transactions with Jones took place (according to plaintiffs, it did not exist until 1986), Taracorp could well have concluded from the rule that it was not engaging in a regulated activity but that Gene Jones was, and that Gene Jones would be responsible for compliance with the rule. The Court does not find that the mere existence of this regulation would create foreseeability in the circumstances of this case. As an analogy, if a Georgia defendant sells a car to an Alabama dealer, which contains various substances the disposal of which may be regulated by ADEM, and if the Alabama dealer subsequently mishandles or improperly disposes of the car's hydraulic fluid by dumping it at the dealership premises, it would not be readily foreseeable to the Georgia seller that it might be sued for property damage by residents living near the dealership. The existence of ADEM's hazardous waste regulations would not make such a suit foreseeable.
 "The record does indicate that Taracorp did not know of any regulatory issues or compliance problems at the Jones site at the time of these transactions. The record does not contain information which warrants a conclusion that this lawsuit, alleging damages from the activities of Gene Jones at the site, was foreseeable to Taracorp at the time of its transactions with Jones.
 "Plaintiffs have attached to their Response the complaint filed in the CERCLA cost recovery action filed in federal court concerning the Gene Jones site, saying, 'Taracorp d/b/a Seitzingers is currently a plaintiff in the U.S. District Court in Birmingham.' While plaintiffs have raised this matter for the basis of showing that Taracorp 'is clearly able to come to this Court,' for the reasons stated above, the Court declines to find with respect to the parties to this case that CERCLA involvement alone, including participation in a *Page 161 
cost recovery action, constitutes a basis for state court jurisdiction over common law claims in this case. CERCLA requires the statutorily responsible parties to pay for site response costs without respect to tort 'fault' concepts, and also allows the filing of cost recovery actions in federal court against other potentially responsible parties or 'PRPs' who may, similarly, wind up paying for a site cleanup without being considered at fault in the traditional tort sense. The Court declines to find that participating either as a plaintiff or defendant in the CERCLA action concerning the Gene Jones site, without more, constitutes 'sufficient contacts' for personal jurisdiction in this case. Each foreign defendant in this case is entitled to the case by case inquiry as to foreseeability and the 'firm nexus' required by our caselaw.
 "Based on the pleadings, briefs, deposition testimony presented to the Court, and the affidavits submitted by Taracorp, the Court finds that Taracorp and Seitzinger's lacked sufficient minimum contacts with the state for personal jurisdiction to exist in this action, and dismisses Taracorp and Seitzinger's from this suit. Pursuant to Rule 54(b), the Court finds there is no just reason for delay and directs entry of a final judgment dismissing the complaint against Taracorp, Inc., and Seitzinger's Inc."
(Record citations omitted; emphasis in original.)
After reviewing the record and the applicable law, this court agrees with the trial court that the supposed contacts between Alabama and Taracorp and Seitzingers were without jurisdictional result, and that the motion to dismiss filed by Taracorp and Seitzingers was due to be granted. Let the judgment be affirmed.
The foregoing opinion was prepared by SAM A. BEATTY, Retired Justice, Supreme Court of Alabama, while serving on active duty status as a judge of this court under the provisions of §12-18-10(e), Ala. Code 1975.
AFFIRMED.
ROBERTSON, P.J., and THIGPEN, J., concur.
MONROE, J., concurs in the result only.
[1] See the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et seq. ("CERCLA" or "Superfund").
[2] Although the neighbors named "Seitzingers, Inc." as a defendant, there is no entity by that name. The record reflects that "Seitzinger's, Inc." was the name of a corporation formed in 1958. It engaged in the lead recycling business in Atlanta, Georgia. In 1978, during the course of a corporate reorganization, Seitzinger's, Inc., was renamed Taracorp, Inc. After the name change, the "Seitzingers division" of Taracorp, Inc., carried on the recycling operations until 1985. At that time, a new subsidiary of Taracorp, Inc., was formed and named "Seitzinger, Inc." The appellees explain in their brief that "Seitzingers, Inc." was a misnomer used for the subsidiary formed in 1985. Because the Seitzingers division of Taracorp was the entity that engaged in the transactions at issue in this case, the parties and the trial court often treated Taracorp, Inc., and Seitzingers, Inc., as a single entity. They also apparently often interchanged the names "Seitzingers" and "Seitzinger's."