The defendant Investors Guaranty Fund, Ltd. ("IGF"), appeals from a default judgment entered against it on behalf of the plaintiff Compass Bank and the codefendant Marengo County Port Authority.[1] The default judgment came after three hearings and two mandamus petitions in which IGF unsuccessfully contested the trial court's personal jurisdiction. IGF never answered the complaint or the cross-claim filed by the Marengo County Port Authority; it defied orders to respond to discovery, defied orders to appear for deposition, and failed to appear in regard to, or to protest, the motions for entry of default and entry of a default judgment against it, although it had proper notice. We affirm.
The Marengo County Port Authority is an Alabama public corporation that was established to purchase and operate the Tenn- Tom Marina in Demopolis for the benefit of the citizens of Marengo County. The Legislature authorized a bond issue to finance the acquisition of the marina. On June 13, 1989, the Authority issued "Capital Accumulator Port Facility Revenue Bonds, Series 1989," in the face amount of $3.9 million. Compass Bank, an Alabama corporation, serves as the trustee, paying agent, and registrar under the terms of the Bond Indenture dated January 1, 1989, and a Supplemental Indenture dated June 14, 1989, executed between Compass Bank and the Authority. Under the terms of the Indenture, the bonds were divided into two classes: "Class A" bonds, which are subject to redemption, and "Class B" bonds, which, by the terms of the Indenture, are not subject to redemption prior to maturity.
The bonds were underwritten, purchased by, and officially registered to Blount, Parrish Roton, Inc., a municipal securities dealer in Montgomery. Blount, Parrish Roton resold the bonds to Arod *Page 187 
Holdings, Inc., as unrated and uninsured bonds. On June 14, 1989, Arod purchased three bondholder insurance policies from the defendant IGF.[2] IGF insured the risk that the revenues of the Authority's marina facility would not be sufficient to retire the bonds. Contemporaneously with the acquisition of the bondholder insurance policies and the creation of the Insurance Trusts (see note 1), Arod resold the bonds to Blount, Parrish Roton and Prudential Bache Capital Funding. On the basis of the IGF insurance, the bonds were reoffered in a secondary public offering underwritten by Blount, Parrish Roton and Prudential-Bache Capital Funding on June 14, 1989. The reoffering official statement for the bonds stated on its cover that the bonds were insured by IGF, and it prominently displayed IGF's name and logo.
The IGF policies insure the payment of the obligations of the Authority to the bondholders on the maturity dates of the bonds. "Bondholder" is defined as "the registered owner, of any Bond(s) as indicated on the registration books maintained by or on behalf of the Issuer for such purpose and at Maturity Date, certified by the Registrar as the Registered Owner."
On November 26, 1997, IGF communicated with Compass Bank, purporting to make "offers" to Compass Bank as trustee under the Trust Indenture, relating to the redemption of "Class A" bonds. IGF addressed its communications to Thomas Radigan at Compass Bank. In January 1998, IGF withdrew and rescinded all "offers." IGF also sought from Compass Bank various documents relating to the bonds.
On December 15, 1997, Compass Bank[3] filed a complaint for a declaratory judgment, in the Circuit Court of Jefferson County, against IGF and the Marengo County Port Authority. In the complaint, Compass Bank sought a declaration of its rights, powers, and duties as bond trustee, paying agent, and registrar under the terms of the Bond Indenture dated January 1, 1989, between Compass Bank and the Authority. IGF did not answer the complaint, but moved to dismiss for lack of personal jurisdiction, arguing that it had insufficient contacts with Alabama under the United States Constitution and Rule 4.2(a)(2), Ala.R.Civ.P. The Authority filed an amended answer, a counterclaim, and a cross-claim.
On August 7, 1998, the trial court conducted a hearing on IGF's motion to dismiss the complaint. The trial court determined that it had jurisdiction over IGF. On that same day, IGF filed an amended motion to dismiss the complaint for lack of subject-matter jurisdiction. On September 4, 1998, IGF filed a second motion to dismiss, asserting that the circuit court lacked subject-matter jurisdiction over the Authority's cross-claim under the U.S. Constitution and Rule 4.2(a)(2), Ala.R.Civ.P., and also because of a forum-selection clause in the bondholder insurance policies stating that IGF can be sued only in Bermuda or in the United Kingdom. The trial court denied IGF's motion to dismiss.
The Authority filed a second notice of deposition and a motion to compel deposition, which the Court heard on October 9, 1998, along with IGF's motion to dismiss the cross-claim. The trial judge denied IGF's motion to dismiss and ordered IGF to appear for deposition in Atlanta by the end of November 1998.
IGF petitioned this Court for a writ of mandamus, challenging the trial court's denial of its initial motion and its amended motion to dismiss Compass Bank's complaint. The Court denied the writ on October 21, 1998 (docket no. 1972258). IGF filed a second mandamus petition challenging *Page 188 
the trial court's denial of its motion to dismiss the Authority's cross-claim.
IGF did not appear for deposition. On November 23, 1998, IGF's counsel stated to the Court IGF's intention not to respond to written discovery or to appear for deposition, but rather to default on the claims made against it. On December 14, 1998, this Court denied IGF's second petition for the writ of mandamus. IGF has never answered Compass Bank's complaint or the Authority's cross-claim. IGF has been represented by Alabama counsel, and it was properly notified of the pendency of, and the hearing on, the motions for default judgment.
The trial court held a hearing on the motions for default judgment filed by Compass Bank and the Authority on March 19, 1999. IGF's counsel notified the parties and the trial judge that they would not appear. The trial court granted the motions and entered a default judgment for Compass Bank and the Authority. IGF appealed.
It is undisputed that IGF never moved to set aside the default judgment. Therefore, the appropriate standard of review in this case is whether the trial judge's entering the default judgment was an abuse of his discretion. Bailey Mortgage Co. v. Gobble-Fite Lumber Co.,565 So.2d 138 (Ala. 1990).
The bondholder policies contain a provision stating that the Supreme Court of Bermuda and the courts of England have exclusive jurisdiction to settle any disputes arising out of or in connection with the policies. IGF, relying on this provision, argues that the Jefferson Circuit Court lacked jurisdiction over it. In Professional Insurance Corp. v.Sutherland, 700 So.2d 347, 351 (Ala. 1997), we adopted the rule that an "outbound" forum-selection clause, such as the one in this case, should be enforced as long as enforcing it is neither unfair nor unreasonable under the circumstances. Compass Bank contends in its brief in opposition to IGA's motion to dismiss that IGF is not licensed to transact insurance business in Alabama and that it has not submitted the bond policies to the Department of Insurance. In support of its contention that it would be unfair and unreasonable to enforce the forum- selection clause in the policies, Compass offered the affidavit of Johnny Johnson, a rate supervisor with the Department, who testified that the Department's policy was not to approve forum-selection clauses such as those in the policies. Johnson notes in his affidavit that the Department's policy has been enacted by the Legislature and is found in § 27-10-50, Ala. Code 1975, which states:
 "The legislature declares that it is a subject of concern that many residents of this state hold policies of insurance issued or delivered in this state by insurers while not authorized to do business in this state, thus presenting to such residents the often insuperable obstacle of resorting to distant forums for the purpose of asserting legal rights under such policies."
Compass further argued to the trial court that the issue for resolution required an interpretation of the terms of the Indenture, not the policies.
The parties briefed the forum-selection-clause issue and argued the issue at a hearing on the amended motion to dismiss. Nevertheless, the trial court concluded in its order that IGF does business in Alabama and insures risks located in Alabama. Upon reviewing the evidence and the arguments presented to the trial court, we conclude that IGF has not demonstrated that the trial court abused its discretion with regard to the forum-selection clause.
We must now determine whether the trial court properly concluded that Alabama has in personam jurisdiction over IGF via Alabama's long-arm rule, Rule 4.2(a)(2), Ala.R.Civ.P. Hanson v. Denckla, 357 U.S. 235
(1958), requires that a nonresident defendant have "sufficient contacts," usually *Page 189 
stated in terms of "certain minimum contacts," with a state in order for that state's courts to acquire personal jurisdiction over that defendant. It is settled that an Alabama court applies a twofold analysis in determining whether it has personal jurisdiction over a nonresident defendant: (1) to determine whether it was foreseeable to that nonresident defendant that he would be sued in this state; and (2) to determine the degree of the defendant's contact with this state, i.e., whether the nonresident defendant had those minimum contacts considered to be sufficient for the court to exert personal jurisdiction. Keelean v. Central Bank of the South, 544 So.2d 153,156-57 (Ala. 1989).
Alabama's long-arm provision, Rule 4.2(a), Ala.R.Civ.P., provides in pertinent part:
 "(2) Sufficient Contacts. A person has sufficient contacts with the state when that person, acting directly or by agent, is or may be legally responsible as a consequence of that person's
"(A) transacting any business in this state;
 "(B) contracting to supply services or goods in this state;
". . . .
 "(G) contracting to insure any person, property, or risk located within this state at the time of contracting;
". . . .
 "(I) otherwise having some minimum contacts with this state and, under the circumstances, it is fair and reasonable to require the person to come to this state to defend an action. The minimum contacts referred to in this subdivision (I) shall be deemed sufficient, notwithstanding a failure to satisfy the requirement of subdivisions (A)-(H) of this subsection (2), so long as the prosecution of the action against a person in this state is not inconsistent with the constitution of this state of the Constitution of the United States."
IGF argues that it is truly a "foreign" corporation. It states that it is a company formed and existing under the laws of Bermuda and that it has its principal place of business in Hamilton, Bermuda. IGF contends that it does not own property in the United States and that it is not qualified to do business in any state in the United States, including Alabama. IGF states that it continues to oppose the trial court's exercise of jurisdiction, based on a belief that submitting to the jurisdiction of the State of Alabama will severely prejudice and compromise IGF's status as a foreign corporation that is subject only to the jurisdiction of the courts of England and Bermuda. IGF admits it has not filed an answer in this matter, but has raised its jurisdictional challenges through motions to dismiss.
It is clear that IGF has sufficient contacts with Alabama to make it fair and reasonable to require IGF to come to this state to defend an action. IGF participated in causing Compass Bank to be appointed as claim settlor in connection with the IGF policies. IGF contracted to provide a service in this state and insured a risk located in this state at the time of contracting. Given these contacts, it was foreseeable to IGF that it might be sued in the State of Alabama.
IGF insured the bonds issued by the Authority, which were to be repaid from the revenues of the Tenn-Tom Marina in Demopolis. The insured bonds were sold nationwide, with a portion of them being purchased by Alabama citizens. The IGF policies clearly and unequivocally: (1) state that IGF "UNCONDITIONALLY AND IRREVOCABLY GUARANTEES to indemnify the Bondholder"; (2) define "Bondholder" to mean the registered owner of any of the bonds, as indicated on the bond registration books maintained by the "Bond Registrar" (i.e., Compass Bank, which is an Alabama corporation, with its principal place of business in Alabama) and on behalf of the Authority, an Alabama public entity; (3) reference and *Page 190 
acknowledge the right and authority of the bondholders and of Compass Bank, as Indenture Trustee and representative of the bondholders, to make a claim under the IGF policies; and (4) reference and acknowledge the appointment of a claims settlor, Compass Bank, to facilitate payments to the bondholders under the IGF policies. Compass Bank is the claims settlor for each of the three bondholder insurance policies, pursuant to the Claims Settlement Trust Agreements between Compass Bank and Bermuda Trust Company, Limited, as trustee of the Insurance Trusts established by the IGF for the benefit of the bondholders.[4] IGF signed and acknowledged these agreements, which clearly contemplate the performance of their essential purpose in the State of Alabama and provide that they are to be governed by, and construed in accordance with, the laws of the State of Alabama.
The record reflects further contacts between IGF and Alabama. IGF purchased the investments placed in the insurance trusts from Blount, Parrish Roton, Inc., a Montgomery securities firm. The chairman and CEO of IGF, Douglas L. King, and a director of IGF, D. Patrick McCoy, were actively involved in the negotiations and discussions that resulted in the Authority's acquisition of the Tenn-Tom Marina and the issuance of the bonds. King and McCoy made at least two site visits to Demopolis. They have received board minutes and other correspondence or relevant information from the Authority. General counsel for IGF, J. Scott Brown, has engaged in repeated telephone and written communication with the Authority president. The president of IGF, Alasdair G. Barclay, has engaged in written and telephone communication with the Authority's president in Demopolis and with representatives of the bond trustee located in Alabama.
In Keelean v. Central Bank of the South, supra, this Court considered the question whether signing a guaranty out of state that will have economic effects in this State will satisfy Alabama's long-arm requirement that a defendant have contacts with Alabama sufficient for an Alabama court to properly exercise jurisdiction over that party. InKeelean, a Florida corporation had executed and delivered a promissory note to an Alabama bank and then had defaulted on the note. The bank sought to have an Alabama court exert personal jurisdiction over the guarantors to the promissory-note obligation. This Court used the following rationale in concluding that the signing of the guarantees met the "sufficient-contact" requirement of the 14th Amendment of the U.S. Constitution and Rule 4.2(a)(2)(I) so that the Alabama court has in personam jurisdiction:
 "Applying the `effects test' mandated by Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804
(1984); Alabama Waterproofing Co. v. Hanby, 431 So.2d 141
(Ala. 1983); Duke v. Young, 496 So.2d 37 (Ala. 1986), we determine that clearly the appellants/guarantors should have foreseen the effects of their contracts of guaranty in the State of Alabama in the event of a default on the promissory note. A clear and firm connection exists between the execution of the promissory note, the subsequent default, the contract of guaranty, and this litigation. Furthermore, it is clear that the signing of the contracts of guaranty for this loan gave appellants/ guarantors the requisite `fair warning' required by Burger King Co. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) . . . ."
Id. at 157. IGF asserts that it was precluded from presenting a "meritorious defense" because if it had made a general appearance and asserted a factual defense, then by doing so, it says, it would *Page 191 
have voluntarily submitted itself to the jurisdiction of the Alabama courts, thus destroying the immunity from being sued in Alabama that it enjoyed as a foreign corporation. However, IGF's assertion is in error. A defense of lack of jurisdiction over the person may be made in a motion or in an answer raising other defenses that formerly would have constituted a general appearance.
In Creel v. Gator Leasing, Inc., 544 So.2d 936 (Ala. 1989), this Court explained as follows:
 "Prior to the adoption of the Rules of Civil Procedure, the law was that a general appearance waived the right to make a special appearance to contest jurisdiction over the person. Ex parte ACK Radio Supply Co. of Georgia, 283 Ala. 630, 219 So.2d 880
(1969); W.S. Fowler Rental Equip. Co. v. Skipper, 276 Ala. 593, 165 So.2d 375 (1963).
 "The present law on the subject stems from the Alabama Rules of Civil Procedure. Rule 12(b) reads, in pertinent part:
 "`Every defense . . . to a claim for relief in any pleading . . . shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the opinion of the pleader be made by motion: . . . (2) lack of jurisdiction over the person. . . . A motion making any of these defenses shall be made before pleading if a further pleading is permitted. No defense or objection is waived by being joined with other defenses or objections in a responsive pleading or motion.'
 "Rule 12(h) provides for `Waiver or preservation of certain defenses':
 "(1) A defense of lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process is waived (A) if omitted from a motion in the circumstances described in subdivision (g) [omission of a defense then available from a motion raising other defenses], or (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course."
544 So.2d at 937-38. The Committee Comments on the 1973 adoption of Rule 12 explain:
 "Alabama has had the traditional `special appearance,' with the required words of limitation in the plea or motion, and the waiver of objections by taking any inconsistent position looking to the merits. This practice is abolished by the third sentence of Rule 12(b). Carlisle v. Loveland Co., 175 F.2d 418 (3rd Cir. 1949). Neither the filing of a general appearance, nor the taking of a position looking to the merits, prevents a party from attacking the jurisdiction of the court or the service of process. This is a departure from former Alabama practice. Nor need words denoting a special appearance ever be used. Nagl v. Warren Corp. 8 F.R.D. 130 (D.Neb. 1948). As under present Alabama practice, a party can claim on appeal error in overruling his jurisdictional objections even though he went ahead and contested on the merits after those objections were overruled. Vilter Mfg. Co. v. Rolaff, 110 F.2d 491 (8th Cir. 1940)."
(Citations omitted.)
We conclude that, under the circumstances of this case, it was fair and reasonable, so as to comport with due-process requirements, for the trial court to require IGF to defend this action in Alabama; therefore, the trial court properly dismissed IGF's motions to dismiss for lack of personal jurisdiction.
We also hold that the trial court did not abuse its discretion in entering the default judgment against IGF. It came after three hearings and two petitions for the writ mandamus in which IGF unsuccessfully contested the trial court's personal jurisdiction. It is not disputed that IGF *Page 192 
never answered the complaint or the cross-claim and that it defied orders to respond to discovery. In addition, IGF failed to appear or to protest the motions for entry of default and entry of default judgment against it, although it had proper notice. "`It is well established that if the defendant is properly within the jurisdiction of the court, and if he has notice of the trial date and does not appear and defend, the court has no choice but to enter judgment for the plaintiff.'" Creel v. Gator Leasing, Inc., supra, 544 So.2d at 937 (quoting Roberts v. Wettlin, 431 So.2d 524 (Ala. 1983)).
AFFIRMED.
Hooper, C.J., and Maddox, Cook, See, Lyons, Brown, and Johnstone, JJ., concur.
Houston, J., recuses himself.
[1] In addition to entering the default judgment, the trial court declared a constructive trust over certain IGF interests and issued a permanent injunction against IGF with respect to certain Insurance Trusts IGF had created.
[2] BIP689-0003-03/19, BIP689-0001-07/05, and BIP689-0002-07/11.
[3] Compass Bank was the claims settlor for each of the IGF policies, pursuant to a Claims Settlement Agreement between Compass Bank and the Bermuda Trust Company, Limited, as trustee of the insurance trust established by IGF for the benefit of the bondholders.
[4] #ARENGOM 1 CST689-2001-07/05; #ARENGOM 2 CST689-2001-07/11; and ARENGOM 3 CST689-2003-03/19.