HARWOOD, Justice.
The petitioners in this ease, General Nutrition Corporation (“GNC”), Phoenix Laboratories, Inc. (“Phoenix”), and Cytodyne Technologies, Inc. (“Cytodyne”), are defendants in a wrongful-death action filed in the Circuit Court of Butler County, Alabama. The action was filed on November 29, 2001, by Richard Gregory, individually and as the administrator of the estate of his deceased wife, Shannon Gregory, pursuant to the wrongful-death statute of the state of Virginia. The petitioners responded to Gregory’s action by filing a joint motion to dismiss, based upon improper venue, arguing that the doctrine of forum non conveniens, codified in Ala.Code 1975, § 6-5-430, required that the trial court dismiss the case so that it could be refiled in Virginia. In the joint motion the petitioners consented to the jurisdiction of the Circuit Court in Newport News, Virginia, and committed to waive assertion of a statute-of-limitations defense if Gregory refiled the action in Virginia within 60 days of the trial court’s entry of an order of dismissal. On May 9, 2002, the trial court held a hearing on the motion, and on May 31, 2002, denied it. The trial court’s May 31 order stated, in pertinent part:
“This matter came to be heard on May 9, 2002 on the Motion to Dismiss pursuant to the doctrine of forum non conve-niens filed by the Defendants. Although the Court might guess or surmise as to certain factual matters and how they may play out at a later trial, it is unable to say based on the evidence before it that the Defendants have met their burden that would require this Court to dismiss the proceeding for subsequent *478 refiling in the state of Virginia, or elsewhere. Additionally, now that the Plaintiff and his children are all residents of Alabama as a result of the incident causing this lawsuit, it would seem particularly harsh to treat the travel and attendance to a foreign jurisdiction by the non-party family members different than those witnesses that the Court can only speculate about at this point.”
The petitioners filed the instant petitions[1] for a writ of mandamus directing the trial court to vacate its order denying their motion to dismiss the wrongful-death action based on the doctrine of forum non conveniens and further directing the trial court to “dismiss this case for transfer to Newport News, Virginia.”
The proper method for obtaining review of a denial of a motion for a change of venue in a civil action is by way of a petition for a writ of mandamus. Ex parte Alabama Great Southern R.R., 788 So.2d 886 (Ala.2000).
“Mandamus is a drastic and extraordinary remedy and is appropriate only when the petitioner can show (1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court.”
Ex parte State ex rel. C.M., 828 So.2d 291, 293 (Ala.2002). “Whether to dismiss an action based on the doctrine of forum non conveniens is within the sound discretion of the trial court, and its ruling on that issue will not be reversed absent an abuse of that discretion.” Ex parte United Brotherhood of Carpenters, 688 So.2d 246, 249 (Ala.1997). Further, this Court’s review is limited to only those facts that were before the trial court. Ex parte National Sec. Ins. Co., 727 So.2d 788, 789 (Ala.1998); Ex parte American Res. Ins. Co., 663 So.2d 932, 936 (Ala.1995).
The record shows that Shannon died on April 4, 2001, while exercising at a high school running track in Newport News, Virginia. The autopsy report stated, among other things, that “[h]er death is consistent with a sudden cardiac death.” Before her death, Shannon had been taking the dietary supplement Xenadrine RFA-1, which contains ephedra.[2] Xenad-rine KFA-1 is manufactured by both Cyto-dyne and Phoenix and was allegedly purchased by Shannon at a GNC retail store located in Newport News. After Shannon’s death, Richard received a military hardship transfer from the United States Air Force, his employer, and moved his family back to Greenville, Alabama, in Butler County, where both Richard and Shannon were reared. GNC, Phoenix, and Cyto-dyne are foreign corporations with their principal places of business located in Pennsylvania, New York, and New Jersey, respectively.
The petitioners argue that this action should be dismissed under the provisions of Ala.Code 1975, § 6-5-430, which provides:
“Whenever, either by common law or the statutes of another state or of the United States, a claim, either upon contract or in tort has arisen outside this state against any person or corporation, such claim may be enforceable in the *479 courts of this state in any county in which jurisdiction of the defendant can be legally obtained in the same manner in which jurisdiction could have been obtained if the claim had arisen in this state; provided, however, the courts of this state shall apply the doctrine of forum non conveniens in determining whether to accept or decline to take jurisdiction of an action based upon such claim originating outside this state; and provided further that, if upon motion of any defendant it is shown that there exists a more appropriate forum outside this state, taking into account the location where the acts giving rise to the action occurred, the convenience of the parties and witnesses, and the interests of justice, the court must dismiss the action without prejudice. Such dismissal may be conditioned upon the defendant or defendants filing with the court a consent (i) to submit to jurisdiction in the identified forum, or (ii) to waive any defense based upon a statute of limitations if an action on the same cause of action is commenced in the identified forum within 60 days of the dismissal.”
As this Court stated in Ex parte Preston Hood Chevrolet, Inc., 638 So.2d 842 (Ala.1994):
“The doctrine of forum non conve-niens requires the court to determine whether to accept or decline jurisdiction of an action based upon a claim arising outside the state. Initially, the party seeking dismissal must show that the claim arose outside the state of Alabama. It is undisputed that [the plaintiffs] claim arose outside Alabama. Next, the party seeking dismissal must show that an alternative forum exists. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981).
“It is clear that whether to dismiss an action on the ground of forum non con-veniens is within the sound discretion of the trial court and that its ruling on that question will not be reversed absent an abuse of discretion. Ex parte Southern Ry., 556 So.2d 1082 (Ala.1989). Section 6-5-430 sets out a list of several factors for the court to use in determining whether to apply the doctrine of forum non conveniens: ‘the location where the acts giving rise to the action occurred’; ‘the convenience of the parties and witnesses’; and the ‘interests of justice.’ In addition, the court should consider the location of the evidence and any other relevant matter in order to assess the degree of actual difficulty and hardship that will result to the defendant in litigating the case in the forum chosen by the plaintiff. Ex parte Southern Ry., 556 So.2d at 1086.
“The court will weigh the relative advantages and burdens associated with litigating in the plaintiffs choice of forum. Nevertheless, ‘ “unless the balance is strongly in favor of the defendant, the plaintiff’s choice of forum should rarely be disturbed.” ’ Ex parte Auto-Owners Ins. Co., 548 So.2d 1029, 1032 (Ala.1989), citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947).”
638 So.2d at 845 (emphasis added). The petitioners assert that they have met the threshold requirements in § 6-5-430 by showing (1) that the claim arose outside Alabama and (2) that an alternative forum exists. In addition, they argue that the convenience of the parties and witnesses, as well as the interests of justice, require the dismissal of the case under the doctrine of forum non conveniens because Shannon’s death occurred in Newport News, Virginia, and most of the evidentia-ry material and witnesses, except for Shannon’s family, are located in Newport *480 News. We now consider whether the trial court abused its discretion by refusing to dismiss the case under Alabama’s doctrine of forum non conveniens.

I. Location of the Acts

Although the petitioners argue that many, if not all, of the acts giving rise to the action occurred in Newport News, Virginia, “that fact alone does not warrant a dismissal based on § 6-5-430.” Ex parte Integon Corp., 672 So.2d 497, 499 (Ala. 1995). Moreover, Gregory contends that several acts relevant to Shannon’s death occurred outside Virginia. Before the trial court, in the May 9, 2002, hearing, Gregory’s counsel made the following argument:
“The other point that Mr. [Anthony] Higgins [counsel for Cytodyne] made in his argument was that the events that underline this claim all occurred in Virginia[;] I beg to differ with them in that there are events that occurred in New Jersey, there are events that occurred in — well, primarily in New Jersey we are presuming, I haven’t been able to do any discovery or take any depositions of Cytodyne’s folks, but a number in the development of this product, the production of this product and the marketing of this product, those are all going to be areas that have to be [sic] testimony provided in this case and those are witnesses who are going to come from places other than Virginia, New York, New Jersey, Pennsylvania and among other places.”

II. Convenience of the Parties and Witnesses

The petitioners argue that this factor is important because, they say, the majority, if not all, of the records and documents necessary in this case-are located outside Alabama. However, “ ‘[a] party who claims that the location of documents is a consideration in a forum non conve-niens dispute must make a showing on the factors such as volume, necessity, and inconvenience that would support such a claim.’ ” Ex parte Nichols, 757 So.2d 374, 378 (Ala.1999)(quoting Ex parte Wiginton, 743 So.2d 1071, 1076 (Ala.1999)). The petitioners offered no evidence to the trial court regarding these factors. In the absence of evidence that would support an inference contrary to the trial court’s judgment, this Court has no basis for second-guessing the trial court’s exercise of its discretion. Thus, the mere assertion, without supporting evidence, that the necessary documents are located outside Alabama offers no basis for granting the petitions.
Regarding the inconvenience of the witnesses, this Court has held that “a defendant cannot assert the inconvenience of its witnesses without making a detailed statement specifying the key witnesses and providing general statements of the subject matter of their testimony.” Ex parte Preston Hood Chevrolet, 638 So.2d at 845. In their motion to dismiss, the petitioners stated:
“... First, the ... decedent was a resident of Virginia. Moreover, all of the vital fact witnesses reside in Virginia, including as previously stated all emergency rescue, fire and law enforcement personnel who responded to the emergency. Moreover, all medical providers and the medical examiner who performed any autopsy on the ... decedent are located in Virginia. This testimony concerning the cause of death will be among the most important evidence on causation and damages in this case.
“The [petitioners] emphasize that causation will be a key issue in this case. Not only are all of the key fact witnesses and medical personnel residents of Virginia, the [petitioners] will seek to learn as *481 much background information as possible on the life of the ... decedent. The [petitioners] may elect to elicit testimony from friends, co-workers, or other individuals with knowledge of the life and lifestyle of the ... decedent in the time period leading up to her death. Upon information and belief, most, if not all, of these witnesses are residents of the State of Virginia. It may also be necessary to elicit testimony regarding the ... decedent’s knowledge of the product, her purchase of the product and her habit regarding use of the product in the time frame leading to her death. Also relevant are issues regarding any additional relevant lifestyle choices as well as any medical treatment she had received in the time period leading up to her death. Again, the necessary witnesses to develop this type of evidence are all likely residents of the State of Virginia.
“While the sheer number of witnesses who would be inconvenienced if this case remains in Butler County are staggering, the [petitioners] are required to show the trial court the necessity and value of the individual witnesses’ testimony. Ex parte Wiginton, 743 So.2d 1071 (Ala.1999). The [petitioners] have clearly met and exceeded this burden. Because it is anticipated that [Gregory] will present testimony regarding the decedent’s cause of death, the factual circumstances of decedent’s death, the physical conditions and alleged pain and suffering at or about the time of her death, all of the immediate after-the-fact witnesses will have very important, and possibly conflicting, testimony concerning causation and damages that must be heard in person by a jury in order for the [petitioners] to receive a fair and just trial.”
(Emphasis in original.)
GNC, in its “Submission of Additional Authority in Support of Motion to Dismiss Pursuant to the Doctrine of Forum Non Conveniens,”[3] stated, in relevant part:
“1. In Interrogatory No. 1, GNC requested [Gregory] to identify ‘all physicians or healthcare providers who were seen by Shannon Gregory in the 15 years preceding her death.’ Of the eight providers identified, five are located in the Newport News, Virginia, area.
“4. In Interrogatory No. 5, GNC requested [Gregory] to ‘state the name, address and telephone number of the employer and/or employers of Shannon Gregory in the 10 years preceding her death.’ Of the three employers listed in the response, two are located in Newport News, Virginia, while the third was at Langley Air Force Base in Virginia.
“7. Importantly, [Gregory] has produced documents related to the autopsy of Shannon Gregory. These documents are included in the documents identified as Exhibit A attached to this pleading. [Exhibit A is not attached to this opinion.] Various witnesses are identified in this report, including Leah L. Bush, M.D., the pathologist who participated in the autopsy, and P. Arthur Hoyt, Jr., M.D., the medical examiner/investigator who authorized and possibly participated in the autopsy. Alfred Ward is also identified in the autopsy as a person who was present. The autopsy took place on April 5, 2001, at 11:00 a.m. The autopsy took place at the Department of Health, *482 Office of the Chief Medical Examiner, 830 South Hampton Avenue, Suite 100, Norfolk, Virginia 23510. Each of these witnesses, as well as other individuals not specifically noted in the report, are crucial in this case and will have testimony which bears significantly on the issues of liability.
“8. In addition to the witnesses and key issues related to the autopsy report, there are additional issues related to the toxicology tests performed on the blood of Shannon Gregory which further support transferring this case to Virginia. While the autopsy report indicates that some of the post-mortem toxicology testing was performed in Virginia, additional testing was performed by National Medical Services, a toxicological testing facility located in Pennsylvania. While this additional testing was not performed in Virginia, witnesses with respect to the drawing of the blood sample, the handling of the blood sample, and other issues related to the chain of custody of the sample ultimately tested in Pennsylvania will include various agents and employees of the Chief Medical Examiner’s office in Norfolk, Virginia. While these individuals are not identified in the documents received to date, undoubtedly additional witnesses in the State of Virginia participated in the drawing and handling of these samples prior to their receipt by National Medical Services in Pennsylvania.
“... The unbiased factual witnesses who were at the scene, and who treated and analyzed the fatal injuries to the decedent are located in Virginia. The jury in this case has the right to hear the live testimony from these witnesses, and to judge each witnesses’ credibility and demeanor. The expert witnesses for each party must rely on the testimony of these on-scene witnesses, the witnesses who have firsthand knowledge of the events at issue in this complex wrongful death action. These experts will appear at trial regardless of the location. However, the independent witnesses, whose testimony will serve as the foundation of the expert opinions, will only appear if this case is transferred to where the death occurred, and where the witnesses live and work. This information about the incident and the injuries will be determinative on both the liability and damage issues in this case.”
(Emphasis in original.) During the May 9, 2002, hearing, counsel for GNC stated:
“... I think the three [petitioners] were all corporate defendants located in different states, [Gregory is] here in Alabama and I think what’s important, not so much the convenience of the parties, I think that that’s going to be about the same no matter where the case is. It’s really the convenience of the witnesses to the case[,] which all the witnesses that have any knowledge of what actually happened in this case are in the state of Virginia. And obviously while we can go [to Virginia] and depose and we can take videotapes[,] we can do discovery up there but when the rubber meets the road we have to come down here and try this case; we don’t have subpoena power over any of these people and you’re going to have a hodgepodge of deposition testimony and videotapes and things that bear on the key events in the case, particularly the cause of death that cannot be presented we think adequately here in Alabama, so we think that that’s a big factor in this case, the convenience to the witnesses.
“Judge, on behalf of the [petitioners] I don’t think other than the materials I’ve supplemented with today I can’t specifically identify all those [witnesses] right now until I do some initial discovery but *483 I don’t know that they would dispute that these people are there and they exist, although they are unnamed at this time.
“One last point if I may, Your Honor, seems like we — we can do discovery but basically what it’s going to boil down to, [Gregory] and [his and Shannon’s] families are here and our folks, the [petitioners], are in Pennsylvania or New Jersey, the facts witnesses, people who lived around her, worked with her, treated her, tried to resuscitate her are all going to be in Virginia no matter how much discovery we do.”
Regarding the inconvenience-of-the-witnesses argument, Gregory argues in his brief to this Court:
“[The petitioners’] statements that all vital fact witnesses reside in Virginia are simply incorrect, and the same was pointed out to the trial court. The only eyewitnesses to the critical events underlying this action — the purchase of, the use of and Shannon Gregory’s death as a result of the use of Xenadrine RFA-1 — reside in Alabama — Mr. Gregory and his three minor children. Again, while [the petitioners] attempt to portray the emergency medical personnel involved in the resuscitative efforts performed upon Shannon Gregory as critically necessary to the defense, the only eyewitnesses to the use of Xenad-rine RFA-1 remain the immediate family members, all of whom currently reside in Butler County, Alabama.”
In the “Plaintiffs Response to Defendants’ Motion to Dismiss Pursuant to Forum Non Conveniens,” Gregory states:
“First, ... there are limited witnesses to the events giving rise to this action. In fact, aside from the three (8) Gregory children, all of whom are residents of Alabama, [Gregory] is aware of only one other potential eyewitness. [Gregory] has attempted to locate and identify this individual, but has not yet been successful.
“While [the petitioners] allege what [Gregory] may attempt to elicit and what the likely states of residents of particular witnesses may be, [Gregory] will show that Shannon Gregory’s former treating physicians are located in Alabama, California and England, as well as Virginia, due to [Gregory’s] moves during his military career. Notwithstanding the fact that there indeed may be witnesses from the state of Virginia that will be called to testify in this matter on behalf of [Gregory], when considering a motion pursuant to Alabama Code § 6-5-430, the court must consider the convenience of all parties and witnesses. Keelean v. Central Bank of the South, 544 So.2d 158, 158 (Ala.1989). As a result of the death of Shannon Gregory, Plaintiff Richard Gregory returned to Alabama under a military hardship transfer with the United States Air Force, [Gregory’s] employer. [Gregory] and his late wife were raised in Green-ville, Butler County, Alabama, and many witnesses familiar with Shannon Gregory remain in Butler County. [ (Emphasis in original.)]
“Likewise, [the petitioners] are foreign corporations that do business in both Alabama and Virginia. It is anticipated that [Gregory] will need to depose and call as witnesses both current and former employees of each [petitioner]. Additionally, based on [Gregory’s] investigation thus far, even critical portions of the post-death investigation were rendered by non-party’s outside of the jurisdiction of the Virginia court. (Based upon [Gregory’s] investigations thus far, the medical examiner’s toxicology ser *484 vices are contracted through a service provider in the state of Pennsylvania.)
“This is, undoubtedly, an action involving evidence that will come from a number of states: Alabama, Virginia, New Jersey, New York and Pennsylvania for certain, and perhaps others. Thus there will be a certain amount of inconvenience visited upon each party, but not to the point of compelling parties to litigate in Virginia out of convenience. The overwhelming volume of records that will be produced during this litigation will come from [the petitioners’] home states, we presume. The limited medical records of Shannon Gregory will pale in comparison to the anticipated discovery production [Gregory] will seek from each [petitioner].”
During the May 9, 2002, hearing, Gregory’s counsel stated:
“Under Virginia’s wrongful death statute we are allowed to try this case just as though Mrs. Gregory had survived. So therefore, we would be able to put on before and after witnesses to talk about how death has affected the family and its impact. Therefore, there are going to be a number of witnesses. [Gregory’s] family is from Greenville. Mrs. Gregory’s family is from Greenville. They have, by an estimation of my client, over 40 relatives that could potentially testify here in Butler County. The convenience the Court has to look to is going to be obvious.
“... There will be the identification of various prior treating physicians from California, Alabama, England. So it’s not just the state of Virginia that is going to have critical witnesses to this case. We mentioned in our reply that— it’s undisputed that there are going to be witnesses from many different states and perhaps different countries who could be called to testify.
“Additionally we are going to be deposing a number of employees, former employees of the [petitioners]. If they are current employees we will of course be able to ask that they attend the trial but if they’re former employees we will have no subpoena power over individuals in New York, New Jersey or Pennsylvania where the [petitioners] reside. Whether [the case is tried] in Virginia or Alabama.”
In weighing the inconvenience of the witnesses, this Court stated in BE & K, Inc. v. United Brotherhood of Carpenters, 688 So.2d 246, 250 (Ala.1997):
“The United States Supreme Court stated in Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255-56, 102 S.Ct. 252, 265-66, 70 L.Ed.2d 419 (1981), that ‘[w]hen the home forum has been chosen, it is reasonable to assume that this choice is convenient.’ This Court has also recognized that it makes little sense to move a case from Alabama to another forum in order to accommodate out-of-state witnesses when to do so would necessarily inconvenience those witnesses who reside within Alabama. See Keelean v. Central Bank of the South, 544 So.2d 153, 158 (Ala.1989) (‘It has not been shown how the parties and witnesses will be inconvenienced in coming to Alabama to litigate this matter, any more than the plaintiffs would be inconvenienced in having to go to Florida’). This Court in Ex parte Auto-Owners Ins. Co., 548 So.2d 1029, 1032 (Ala.1989), quoting the United States Supreme Court’s first authoritative statement on the doctrine of forum non conveniens in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947), noted that ‘unless the balance is strongly in favor of the defendant, the *485 plaintiffs choice of forum should rarely be disturbed.’ This Court also emphasized in Ex parte Auto-Owners that ‘[t]he prevailing question of whether a case should be entertained or dismissed depends largely upon the facts of the particular case and is in the sound discretion of the trial judge.’ 548 So.2d at 1032, quoting Restatement (Second) of Conflict of Laws § 84 at 251 (1971).”
Under the facts of this case, this Court is unable to conclude that the inconvenience posed to the petitioners’ witnesses is so great that the convenience of the witnesses requires that this action be dismissed.

III. The Interests of Justice

The petitioners next argue that the interests of justice require a dismissal of this case. First, they argue that because the parties have agreed that Virginia law will be applied in this case, a Virginia court would be a more appropriate forum. Second, they argue that Gregory abused the venue-selection process when he moved to Butler County after the death of his wife and subsequently filed an action against them in that forum. Third, they argue that they would be unable to subpoena potential witnesses to testify in Butler County.
First, although some aspects of Virginia law may govern this case, the mere fact that the law of a foreign state is controlling does not warrant a dismissal. See Ex parte Preston Hood Chevrolet, 638 So.2d at 845 (reaffirming the holding in Ex parte Allied-Signal, Inc., 561 So.2d 1062, 1064-65 (Ala.1990), that the “mere fact that another state’s law is controlling does not warrant a dismissal”). Second, we cannot agree with the petitioners’ contention that Gregory was attempting to abuse the venue-selection process when he moved to Butler County; there was no evidence before the trial court supporting this contention. The evidence shows that after the death of his wife, Gregory moved his family back to Greenville, Alabama, where he and his wife had been reared. Without more, we cannot conclude that this behavior was an abuse of the venue-selection process. Finally, regarding the unavailability of subpoenas for witnesses outside Alabama, Rule 28, Ala.R.Civ.P., and Va.Code Ann. § 8.01-411 (Michie 2000), could combine to provide for discovery in Virginia. See generally America Online, Inc. v. Anonymous Publicly Traded Company, 261 Va. 350, 542 S.E.2d 377 (2001)(“Under the [Uniform Foreign Depositions Act] reciprocity is required, and the ‘privilege extended to persons in other states by § 8.01-411 shall only apply to those states which extended the same privilege to persons in this Commonwealth.’ ”). Regarding the availability of discovery, counsel for GNC, during the May 9, 2002, hearing, referencing the ability to accomplish discovery, stated: “And obviously while we can go [to Virginia] and depose and we can take videotapes[,] we can do discovery up there but when the rubber meets the road we have to come down here and try this case....” Pursuant to Va. Code Ann. § 8.01-411, the parties could compel the attendance at deposition of any Virginia witness who might decline to attend voluntarily the same as they would do were the witness sought for a trial appearance in Virginia. Thus, the petitioners have not shown that the interests of justice mandate a dismissal of this case.
As this Court stated in Ex parte Preston Hood Chevrolet, 638 So.2d at 846, “[a]ll of the factors must be positively found in order to justify dismissal on the grounds of forum non conveniens.” (Emphasis added.) Given the circumstances of this case, we are unable to conclude that the trial court abused its discretion by denying the petitioners’ motion to dismiss under Ala.Code *486 1975, § 6-5-430. The petitions for the writ of mandamus are therefore denied.
PETITIONS DENIED.
MOORE, C.J., and HOUSTON, SEE, LYONS, BROWN, JOHNSTONE, and WOODALL, JJ., concur.
STUART, J., dissents.

. The three petitions were consolidated on August 16, 2002, for this Court’s review.

. Ephedra is defined as "1. Any of various gymnospermous, mostly shrubby plants of the genus Ephedra, some of which are used as a source of ephedrine. 2. A stimulant, often sold as pills or tablets, derived from a plant of this genus.” American Heritage Dictionary of the English Language (4th ed., Houghton Mifflin Co.2000).

. GNC’s "Submission of Additional Authority” was subsequently adopted by the other petitioners.